Kaleigh N. Boyd, OSB #253094
kboyd@mcnaul.com
MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, WA 98101
(206) 467-1816
Attorney for Plaintiffs

*Additional Counsel on Signature Page*


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| DIANN CALDWELL, PHILLIP TAYLOR, RACHEL BAILEY, ROMAN MERINO, TYRANIKA JOHNSON, GREGORY HOFFERT, and ELZEY LINDER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon corporation,<br><br>Defendant. | Case No.:<br><br>PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Diann Caldwell, Phillip Taylor, Rachel Bailey, Roman Merino, Tyranika Johnson, Gregory Hoffert, and Elzey Linder ("Plaintiffs") on behalf of themselves and all others similarly situated, by and through counsel, bring this action against Defendant Nike, Inc. ("Defendant" or "Nike"). The allegations contained herein, which are based on Plaintiffs' knowledge of facts pertaining to themselves and their own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    1

**NATURE OF THE CASE**

1.     This class action arises from Nike's retention of windfall profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2.     Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3.     Major U.S. importers—including Nike—responded by increasing prices on consumer goods to offset the cost of these tariffs. On June 1, 2025, Nike implemented price increases on certain footwear and clothing. As a result, American consumers paid higher retail prices for consumer goods reflecting the economic burden of those tariffs.

4.     On February 20, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

5.     As a consequence of that decision, importers who paid those tariffs—including Nike—became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP").

6.     The economic reality of the tariff regime, however, is that importers like Nike did not ultimately bear all the costs of the tariffs. Instead, the importers passed the elevated costs on to consumers in the form of higher retail prices.

7.     Nike therefore collected the tariff costs from consumers through elevated pricing, while seeking refunds of the same tariff payments from the federal government.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    2

8.      Unless restrained by this Court, Nike stands to recover the same tariff payments twice—once from consumers through higher prices and again from the federal government through tariff refunds, including interest paid by the government on those funds.

9.      Nike has made no legally binding commitment to return tariff-related overcharges to the consumers who actually paid them.

10.     This lawsuit seeks to prevent that unjust result.

11.     Plaintiffs bring this action on behalf of millions of consumers who purchased goods from Nike during the tariff period and who paid inflated prices reflecting Nike's pass-through of unlawful tariffs.

12.     Plaintiffs seek restitution of those tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

## JURISDICTION AND VENUE

13.     Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because: (a) Plaintiffs and at least one member of the class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

14.     The Court has personal jurisdiction over Defendant because Nike is headquartered in this district, conducts significant business transactions in this District, and because the wrongful conduct occurred in and emanated from this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business in located in in this District in Beaverton, Oregon, and a substantial portion of the events and conduct giving rise to the claims occurred in the District of Oregon.

**PARTIES**

16.     Plaintiff Diann Caldwell is a resident and citizen of Whiting, New Jersey. During the Class Period, Plaintiff Caldwell purchased goods from Nike that were imported from countries subject to the IEEPA tariffs. Plaintiff Caldwell paid retail prices for those goods that were increased by Nike to account for the tariffs imposed on imported products. Plaintiff Caldwell would not have paid those higher prices absent the unlawful tariffs and Nike's pass-through of those tariffs to consumers.

17.     Plaintiff Phillip Taylor is a resident and citizen of Villa Park, Illinois. During the Class Period, Plaintiff Taylor purchased goods from Nike that were imported from countries subject to the IEEPA tariffs. Plaintiff Taylor paid retail prices for those goods that were increased by Nike to account for the tariffs imposed on imported products. Plaintiff Taylor would not have paid those higher prices absent the unlawful tariffs and Nike's pass-through of those tariffs to consumers.

18.     Plaintiff Rachel Bailey is a resident and citizen of Saginaw, Michigan. During the Class Period, Plaintiff Bailey purchased goods from Nike that were imported from countries subject to the IEEPA tariffs. Plaintiff Bailey paid retail prices for those goods that were increased by Nike to account for the tariffs imposed on imported products. Plaintiff Bailey would not have paid those higher prices absent the unlawful tariffs and Nike's pass-through of those tariffs to consumers.

19.     Plaintiff Roman Merino is a resident and citizen of Kansas City, Missouri. During the Class Period, Plaintiff Merino purchased goods from Nike that were imported from countries subject to the IEEPA tariffs. Plaintiff Merino paid retail prices for those goods that were increased by Nike to account for the tariffs imposed on imported products. Plaintiff Merino would not have

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                4

paid those higher prices absent the unlawful tariffs and Nike's pass-through of those tariffs to consumers.

20.     Plaintiff Tyranika Johnson is a resident and citizen of Gramercy, Louisiana. During the Class Period, Plaintiff Johnson purchased goods from Nike that were imported from countries subject to the IEEPA tariffs. Plaintiff Johnson paid retail prices for those goods that were increased by Nike to account for the tariffs imposed on imported products. Plaintiff Johnson would not have paid those higher prices absent the unlawful tariffs and Nike's pass-through of those tariffs to consumers.

21.     Plaintiff Gregory Hoffert is a resident and citizen of Fair Oaks, California. During the Class Period, Plaintiff Hoffert purchased goods from Nike that were imported from countries subject to the IEEPA tariffs. Plaintiff Hoffert paid retail prices for those goods that were increased by Nike to account for the tariffs imposed on imported products. Plaintiff Hoffert would not have paid those higher prices absent the unlawful tariffs and Nike's pass-through of those tariffs to consumers.

22.     Plaintiff Elzey Linder is a resident and citizen of Fair Oaks, California. During the Class Period, Plaintiff Linder purchased goods from Nike that were imported from countries subject to the IEEPA tariffs. Plaintiff Nike paid retail prices for those goods that were increased by Nike to account for the tariffs imposed on imported products. Plaintiff Nike would not have paid those higher prices absent the unlawful tariffs and Nike's pass-through of those tariffs to consumers.

23.     Defendant Nike, Inc. is an Oregon corporation with its principal place of business at One Bowerman Drive, Beaverton, OR 97005. Nike is responsible for the marketing, distribution, and sale of its products in the United States. Nike develops, designs, manufactures, and sells

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    5

athletic footwear and apparel. A significant portion of the products Nike sells are imported goods subject to IEEPA tariffs imposed by the United States government.

## FACTUAL BACKGROUND

### A.    Nike's Business

24.    Nike is one of the largest athletic footwear and apparel suppliers in the United States.

25.    In 1964, Phil Knight and his former University of Oregon coach, Bill Bowerman, formed Blue Ribbon Sports. In 1971, Knight and Bowerman changed the company's name to Nike after the Greek goddess of victory.

26.    Nike went public in 1980 and struggled until 1984 when it signed a deal with NBA rookie Michael Jordan which introduced the iconic Air Jordan basketball shoe series.

27.    Over the next several decades, Nike rapidly expanded its business and diversifying its product line beyond just athletic footwear including:

- 1988: Nike acquired shoe company Cole Haan (sold in 2012).

- 1990: NikeTown store chain debuted to enhance the shopping experience and expose consumers to buy Nike's full range of products.

- 1994: Nike acquired Canstar Sports, parent company of skate and hockey equipment maker Bauer (sold in 2008).

- 1996: Nike created Nike ACG ("all conditions gear"), which markets products for extreme sports such as snowboarding and mountain biking.

- Early 2000s: Nike moved into sports technology accessories including portable heart rate monitors, high-altitude wrist compasses, fitness apps, and its fitness studio.

- 2003: Nike acquired Converse.

- 2008: Nike acquired athletic apparel and equipment company Umbro (sold in 2012).

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                6

- 2014: Nike launched NikeLab, online and physical stores to showcase its product innovation and highlight where sports and fashion meet.[1]

28.     Nike is supplied by 112 footwear factories located in 11 different countries.[2] For the 2025 fiscal year, contract factories in Vietnam, Indonesia, and China manufactured approximately 51%, 28%, and 17% of total Nike Brand footwear, respectively.[3] The company also contracts with 303 apparel manufacturers operating in 34 different countries.[4] Vietnam is its largest source of apparel at 31%, followed by China and Cambodia at 15% each.[5]

29.     Imported goods therefore account for most, if not virtually all, of Nike's retail sales in the United States. Because Nike imports most if not all of the goods it sells, the IEEPA tariffs directly increased Nike's cost of importing merchandise into the United States.[6]

### B.     The IEEPA Tariffs

30.     Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries pursuant to a series of executive orders declaring national emergencies related to trade and supply chain concerns.[7]

31.     Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners. The orders included duties of approximately 25 percent on many imports from Canada

---

[1] Debbie Carlson, *Nike, Inc.*, available at https://www.britannica.com/money/Nike-Inc.

[2] J. William Carpenter, *Nike Stock (NKE): Analyzing 3 Key Suppliers* (December 16, 2025), available at https://www.investopedia.com/articles/markets/051416/nike-stock-analyzing-5-key-suppliers-nke.asp.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] Jim Kennemer, *Where Does Nike Make Shoes and Apparel* (Feb 17, 2026), available at https://www.cosmosourcing.com/blog/where-does-nike-make-shoes-and-apparel

[7] *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    7

and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.[8]

32.     The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that rely heavily on international supply chains to source merchandise—like Defendant Nike.[9]

33.     Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major retailers such as Nike—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered merchandise into the country.[10]

34.     Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.[11]

35.     On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation and invalidated the tariff orders issued pursuant to that statute.[12]

36.     The Supreme Court's decision effectively eliminated the legal basis for the IEEPA tariffs and created a pathway for importers that had paid those duties—including large retailers like Nike—to seek refunds of the tariffs previously collected by the federal government.

---

[8] *See* Reuters, *Trump Orders Tariffs on Canada, Mexico and China*, Feb. 1, 2025.
[9] *See* Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)
[10] *See* U.S. Customs & Border Prot., *Importing Into the United States: A Guide for Commercial Importers*.
[11] *See* Reuters, *Businesses Sue Over Trump's Tariffs*, Apr. 2025.
[12] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026)

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    8

### C.     Tariffs Are Economically Borne by Consumers

37.     Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties.

38.     Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[13]

39.     When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[14] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

---

[13] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

[14] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org/2025/06/are-businesses-absorbing-the-tariffs-or-passing-them-on-to-their-customers/.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    9

40.     Nike followed this same pattern during the tariff period. As a major importer of consumer goods, Nike faced increased costs resulting from tariffs on its products and took steps to address those cost pressures through pricing and merchandising decisions.[15] [16] [17]

41.     Indeed, as detailed below, Nike publicly acknowledged that tariffs would affect pricing decisions and the company's cost structure. In those communications, Nike explained that tariffs increased the company's merchandise costs and required Nike to evaluate price adjustments and other operational responses designed to manage those additional expenses.

42.     As a result, consumers who purchased goods from Nike during the tariff period paid elevated prices reflecting the tariff-related cost increases incorporated into Nike's retail pricing.

**D.     Nike's Statements Regarding Tariff Related Price Increases and Refunds**

43.     Nike publicly acknowledged, early in the tariff period, that tariffs would increase its costs and place upward pressure on consumer prices.

44.     On April 29, 2025, Nike joined as a signatory in a letter by the Footwear Distributors & Retailers of America ("FDRA") addressed to the President of the United States stating that:

> The significant price increases from these tariffs will preclude these American consumers from having affordable footwear options. ... We are in fact the one

---

[15] *See* Jordan Hart, Business Insider, *Nike plans 'surgical' price increases as it expects $1 billion hit from tariffs* (June 26, 2025), available at https://www.businessinsider.com/nike-raising-prices-us-expects-1-billion-tariff-hit-2025-6.
[16] *See* Lori Ann LaRocco, CNBC, *Nike prices are rising one year into CEO Elliot Hill's turnaround plan. Tariffs are part of the story* (October 6, 2026) available at https://www.cnbc.com/2025/10/06/nike-prices-rising-tariffs-ceo-elliott-hill-turnaround-plan.html.
[17] *See* Faizan Farooque, Yahoo! Finance, *Nike Raises Prices as Tariffs and Turnaround Plan Take Hold* (October 6, 2025), available at https://finance.yahoo.com/news/nike-raises-prices-tariffs-turnaround-211649463.html.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    10

industry where tariffs do not significantly increase domestic production; tariffs just become a major impact at the cash register for every family.[18]

45.     Consistent with its assertions in the FDRA letter regarding tariffs costs being passed down to the consumer, Nike publicly announced that it would be implementing "surgical" price increases in response to the tariffs. Specifically, Nike announced a series of price increases starting on or about June 1, 2025 including a $5 to $10 hike in select footwear and $2 to $10 increase among adult apparel and equipment to defray the estimated $1 billion hit to its business caused by the tariffs.[19]

46.     Nike's public statements and actions thus confirmed two critical points: first, that tariffs were increasing Nike's costs on imported goods; and second, that Nike was making pricing decisions in direct response to those tariff-driven cost increases. Indeed, Nike did not simply absorb the full cost of the unlawful tariffs; rather, Nike passed on at least part of those costs to consumers through higher retail prices.

47.     Nike's own public statements and actions therefore establish a coherent timeline: Nike acknowledged tariff-driven cost increases and Nike selectively increased prices on affected goods during the tariff period.

48.     Plaintiffs and Class members paid tariff-inflated prices at Nike during the Class Period, while Nike now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

---

[18] *See* FDRA Footwear Distributors & Retailers of America Letter to President Donald Trump (April 29, 2025), available at https://fdra.org/wp-content/uploads/2025/04/April-29-Footwear-POTUS-Letter.pdf.

[19] *See* Anthony Robledo & Kathryn Palmer, USA Today, *Nike announces new price hikes: See what other retailers have done since Trump tariffs* (May 22, 2025) available at https://www.usatoday.com/story/money/2025/05/22/nike-price-hikes-tariffs/83800060007/; *see also supra* at Footnote No. 15.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                 11

**E.      Nike Seeks Tariff Refunds**

49.      As described above, in February 2026, the Supreme Court held that the President's tariff regime exceeded the statutory authority granted by IEEPA and invalidated the challenged tariff orders.[20] Following the SCOTUS decision, importers that had paid IEEPA tariffs—including Nike—became eligible to pursue refunds of those duties.

50.      On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered U.S. CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[21]

51.      The potential refund pool resulting from the invalidation of the IEEPA tariffs is enormous. Public reporting concerning the refund proceedings states that U.S. CBP estimated an "unprecedented volume of refunds," potentially involving 53,173,939 refunds across 330,566 importers if each entry subject to IEEPA duties is entitled to a refund.[22]

52.      Before the Supreme Court struck down the IEEPA tariffs, Nike's executives warned that the company was facing a tariff hit of over $1 billion dollars on an annual basis and implemented tariff price increases amidst those tariffs.[23]

53.      Nike is among the country's largest importers of consumer goods and therefore stands to recover substantial sums if tariff refunds are paid.

---

[20] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).
[21] *See Atmus Filtration, Inc. v. United States*, No. 26-01259, (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.
[22] *See* Thompson Hine LLP, *CIT Suspends Earlier Order Directing IEEPA Tariff Refunds* (Mar. 6, 2026), https://www.thompsonhinesmartrade.com/2026/03/cit-suspends-earlier-order-directing-ieepa-tariff-refunds/.
[23] *See supra* at Footnote No. 15.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    12

54.     Given Nike scale as a major importer, Nike can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Nike previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Nike now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiffs and Class members.

55.     In practical terms, Nike stands to receive a windfall: it has already recouped tariff costs from consumers through higher prices, and it now stands in line to recover those same unlawful tariff payments from the federal government.

## CLASS ALLEGATIONS

56.     A class action is the proper forum to bring Plaintiffs' claims under FRCP 23. The potential Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

57.     This action satisfies all of the implicit and explicit requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance and superiority.

58.     **Numerosity**: the Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery.  Given the consumer base of Nike, the class numbers in the hundreds of thousands or millions of consumers.

59.     **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    13

the classwide litigation. These shared questions predominate over individual questions, and they include, without limitation:

    a.   whether Nike paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") on imported goods during the Class Period;

    b.   whether Nike increased retail prices on goods sold to consumers in response to those tariffs;

    c.   whether Nike passed through some or all of the tariff costs to consumers through higher prices;

    d.   whether Nike sought or will seek refunds of those tariffs from the federal government;

    e.   whether Nike's retention of tariff refunds corresponding to tariff costs paid by consumers constitutes unjust enrichment;

    f.   whether Nike's conduct was unfair under applicable consumer protection laws; and

    g.   the appropriate measure of restitution, damages, or other relief resulting from Nike's conduct.

60.    **Typicality**: Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, bought products from Nike subject to tariff related price increases.

61.    The claims of the Class Representative Plaintiffs are furthermore typical of other Class members because they make the same claims as other Class members. Plaintiffs have an interest in seeking compensation from Defendant.

62.    **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES         14

of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.

63.     **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

64.     The nature of this action and the nature of federal and state laws available to Plaintiffs and the Class makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged. Without the class action mechanism, Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class, and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    15

65.    The proposed National Class is described as follows:

All persons in the United States who purchased goods from Nike during the period June 1, 2025, through February 24, 2026, on which Nike raised prices.

66.    The proposed California Class is described as follows:

All persons in California who purchased goods from Nike during the period June 1, 2025, through February 24, 2026, on which Nike raised prices.

67.    Plaintiffs reserve the right to modify or amend the definition of the proposed class and to modify, amend or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

68.    Plaintiffs will fairly and adequately protect the interests of the Class. The interests of the class representative are consistent with those of the other members of the Class. In addition, Plaintiffs are represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

69.    The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

70.    Excluded from the Class are:

a.    Defendant and any entities in which Defendant has a controlling interest;

b.    Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c.    The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES              16

    d.      All persons or entities that properly execute and timely file a request for exclusion from the Class; and

    e.      Any attorneys representing the Plaintiffs or the Class.

### CLAIMS FOR RELIEF
### COUNT I
### Unjust Enrichment
### (On behalf of Plaintiffs and the Class)

71.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

72.    Plaintiffs and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them in the form of price increases on goods during the period June 1, 2025, through February 24, 2026.

73.    Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiffs and the Class.

74.    Under principles of equity and good conscience, Defendant should not be permitted to retain the amount of the price increases obtained from Plaintiffs and the members of the Class, which Defendant has unjustly obtained as a result of its price increases on goods subject to unlawful tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits when it is seeking a refund of the duties it paid.

75.    Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES       17

## COUNT II
## Money Had and Received
### (On behalf of Plaintiffs and the Class)

76.  Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

77.  Plaintiffs allege this claim individually and on behalf of the proposed class.

78.  Defendant received money from Plaintiffs and from each member of the proposed Class in the form of a tariff surcharge. The Supreme Court has determined that the tariffs were unlawful.

79.  The money belonged to Plaintiffs and to each member of the proposed Class.

80.  Defendant has not returned the money.

81.  It will give offense to equity and good conscience if Defendant is permitted to retain the tariff surcharge. Plaintiffs seek the return of the money in an amount to be proven at trial.

82.  Plaintiffs seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

## COUNT III
## Violation of California's Unfair Competition Law ("UCL")
## Cal Bus. & Prof. Code § 17200, *et seq.*
### (On behalf of Plaintiffs Hoffert and Linder and the California Class)

85.  Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

86.  Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    18

87.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

88.     Nike acted with knowledge and intent.

89.     Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. Nike engaged in unfair and deceptive acts by: (i) charging customers a tariff surcharge; and (ii) retaining tariff refunds despite having passed the costs to its customers.

90.     Nike's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Nike's violation of consumer protection and unfair competition laws resulted in harm to consumers.

91.     Defendant's wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendant was engaged in sales nationwide.

92.     Defendant has profited immensely from its unlawful conduct.

93.     As a result of Defendant's conduct, Plaintiffs and the Class members were injured in their business or property—*i.e.*, economic injury—in that they paid inflated prices for goods subject to tariffs.

94.     As described throughout this Complaint, Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by the benefits to consumers or competition.

95.     Defendant's unfair or deceptive conduct proximately caused Plaintiffs' and the Class members' injury because, but for the challenged conduct, Plaintiffs and the Class members

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    19

would not have paid inflated prices for goods subject to tariffs and they did so as a direct, foreseeable, and planned consequence of that conduct.

96.     The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

97.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

98.     Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**COUNT IV**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiffs Hoffert and Linder and the Class)**

99.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

100.    Nike is a "person" as defined by California Civil Code § 1761(c).

101.    The California Plaintiffs and the other California Class members are "consumers" within the meaning of California Civil Code § 1761(d).

102.    For the reasons alleged above, Nike violated California Civil Code § 1770(a)(5)(7) and (9).

103.    Nike's unfair and deceptive acts or practices occurred repeatedly in Nike's trade or business.

104.    Nike acted with knowledge and intent.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES            20

105.    Nike engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

106.    With respect to restitution under the CLRA claim, there is no adequate remedy at law for the reasons already alleged above.

107.    As a result of Nike's misconduct, the Plaintiffs and other Class members have suffered monetary harm.

108.    Plaintiffs seek all relief available under this cause of action.

**COUNT V**
**Declaratory Relief, 28 U.S.C. § 2201**
**(On behalf of Plaintiffs and the Class)**

109.    Plaintiffsincorporate the foregoing allegations as if fully set forth herein.

110.    Plaintiffs allege this claim individually and on behalf of the proposed Class.

111.    Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

112.    Plaintiffs' claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

113.    Plaintiffs have suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiffs will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

114.    This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiffs but refunded to Defendant is unlawful for any of the above reasons.

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                21

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the proposed class pray for relief and judgment against Defendant, as follows:

a.  For an order certifying the proposed classes, appointing Plaintiffs and their counsel to represent the proposed class and notice to the proposed classes to be paid by Defendant;

b.  For damages suffered by Plaintiffs and members of the proposed class;

c.  For restitution to Plaintiffs and the proposed class of all monies wrongfully obtained by Defendant;

d.  For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

e.  An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f.  For Plaintiffs' reasonable attorneys' fees, as permitted by law;

g.  For Plaintiffs' costs incurred;

h.  For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i.  For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all issues so triable.

DATED this 8th day or May, 2026.                    Respectfully submitted,


By: */s/ Kaleigh N. Boyd*
    Kaleigh N. Boyd, OSB #253094
    MCNAUL EBEL PLLC
    600 University Street, Suite 2700
    Seattle, WA 98101
    Tel: (206) 467-1816
    *kboyd@mcnaul.com*

    M. Anderson Berry*
    Timothy Emery*
    Brook Garberding*
    Gregory Haroutunian*
    Brandon P. Jack*
    EMERY REDDY, PC
    600 Stewart Street, Suite 1100
    Seattle, WA 98101
    Phone: 916.823.6955
    *anderson@emeryreddy.com*
    *emeryt@emeryreddy.com*
    *brook@emeryreddy.com*
    *gregory@emeryreddy.com*
    *brandon@emeryreddy.com*

    Jason T. Dennett*
    MILBERG, PLLC
    1700 7th Ave, Suite 2100
    Seattle, WA 98101
    Telephone: (516) 515-9124
    *jdennett@milberg.com*

    Gary M. Klinger*
    MILBERG, PLLC
    227 W. Monroe Street, Suite 2100
    Chicago, IL 60606
    Telephone: 866.252.0878
    *gklinger@milberg.com*

    *(Signature block continues on next page.)*

PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES                    23

Terence R. Coates*
Dylan J. Gould*
MARKOVITS, STOCK
& DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Zachary Arbitman*
Nicole A. Maruzzi*
FELDMAN SHEPHERD
WOHLGELERNTER TANNER
WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
*zarbitman@feldmanshepherd.com*
*nmaruzzi@feldmanshepherd.com*

*Counsel for Plaintiffs*

**Pro Hac Vice* applications forthcoming