Kaleigh N. Boyd, OSB #253094
kboyd@mcnaul.com
**MCNAUL EBEL PLLC**
600 University Street, Suite 2700
Seattle, WA 98101
T: (206) 467-1816

*Attorney for Plaintiffs and the Proposed Class*

[*Additional Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DIANN CALDWELL, JAMES DUNN, PHILLIP TAYLOR, RACHEL BAILEY, ROMAN MERINO, TYRANIKA JOHNSON, GREGORY HOFFERT, ELZEY LINDER, CHRIS HUFANA, ROBERT WHITE, and JAVIER MANCILLA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NIKE, INC., an Oregon corporation,

Defendant.

Case No.: 3:26-cv-00923-IM (Lead)
3:26-cv-00954-IM (Trailing)

**PLAINTIFFS' OPPOSITION TO DEFENDANT NIKE, INC.'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

*REQUEST FOR ORAL ARGUMENT*

# TABLE OF CONTENTS

INTRODUCTION .... 1

STATEMENT OF FACTS .... 2

B. Nike Publicly Connected the Tariffs to Increased Consumer Prices .... 3

C. The Supreme Court Subsequently Held That IEEPA Did Not Authorize the Tariffs and Nike Now Benefits from Tariff Refunds .... 3

D. Plaintiffs Paid Tariff-Inflated Prices and Have Received No Corresponding Refund .... 4

LEGAL STANDARD .... 4

ARGUMENT .... 4

A. PLAINTIFFS HAVE ARTICLE III STANDING .... 4

1. Plaintiffs Allege Concrete Economic Injury .... 5

a. Nike's Deception Argument Fails .... 6

b. Delivery of the Products Does Not Eliminate Loss .... 7

c. The Complaint Alleges Injury to Every Named Plaintiff .... 8

2. Plaintiffs' Loss Is Fairly Traceable to Nike's Conduct .... 10

B. THE CONSUMER PROTECTION CLAIMS ARE ADEQUATELY PLED .... 10

1. Rule 9(b) Does Not Bar the Consumer Protection Claims .... 11

2. Plaintiffs Plead Unfair, Unethical, and Unconscionable Practices .... 12

a. Plaintiffs Satisfy the FTC Balancing Act Test .... 13

b. Plaintiffs Have Alleged Nike's Conduct Is Otherwise Unfair, Unconscionable, Unethical, or Violates Established Public Policy .... 14

c. The Composite-Price Doctrine Does Not Apply .... 16

3. Plaintiffs Adequately Allege Deception .... 17

a. Nike's Presentation of Its Price Increases Was Misleading .... 18

b. Plaintiffs' Deception Claims Do Not Depend on Hindsight .... 19

4. Plaintiffs Plead Violations of the UTPA, MCPA, UCL, and CLRA .... 19

a. UTPA .... 19

b. MCPA .... 20

c. UCL and CLRA .... 20

i. Keeping the Refund Is Unfair Under Every Test .... 21

ii. Nike's Defenses Miss the Retention Theory .... 21

iii. Restitution Fits the Wrong, and *Sonner* Does Not Bar It .... 21

iv. The CLRA Claim Is Adequately Pled ........ 22
5. Plaintiffs Adequately Plead Causation and Reliance, Where Required ........ 23
a. Causation ........ 23
b. Reliance ........ 24
6. Plaintiffs Have Adequately Pled Knowledge and Intent ........ 25
7. The LUTPA Class Bar Does Not Apply in Federal Court ........ 26
C. THE UNJUST ENRICHMENT CLAIM SURVIVES ........ 26
1. Nike Was Unjustly Enriched upon Receiving IEEPA Refunds ........ 26
2. Nike's Attempts to Dismiss the Unjust Enrichment Claim Fail ........ 29
a. No Express Contract Addresses Tariff Refunds ........ 29
b. Nike's Benefit-of-the-Bargain Argument Is a Straw Man ........ 30
c. Plaintiffs' Consumer Protection Claims Survive Alongside Unjust Enrichment Claims ........ 31
D. PLAINTIFFS HAVE A VALID MONEY HAD AND RECEIVED CLAIM ........ 31
E. PLAINTIFFS STATE A CLAIM UNDER THE DECLARATORY JUDGMENT ACT 33
F. ANY DEFICIENCY IS CURABLE, AND LEAVE TO AMEND SHOULD BE GRANTED ........ 33
CONCLUSION ........ 34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstream Business US, LLC v. Carrier Network Solutions, LLC*,
2021 WL 3488086 (D. Or. Aug. 9, 2021) ........ 28

*Am. Life Ins. Co. v. Stewart*,
300 U.S. 203 (1937) ........ 22

*Anniston Mfg. Co. v. Davis*,
301 U.S. 337 (1937) ........ 15, 32

*Arnett v. Bank of America, N.A.*,
874 F.Supp.2d 1021 (D. Or. 2012) ........ 30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Baggett v. Hewlett-Packard Co.*,
582 F. Supp. 2d 1261 (C.D. Cal. 2007) ........ 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Belle Isle Grill Corp. v. City of Detroit*,
256 Mich.App. 463 (Mich. Ct. App. 2003) ........ 30

*Belmont Int'l v. Am. Int'l*,
313 Or. 112 (1992) ........ 32

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ........ 8, 9

*Bohr v. Tillamook Cnty. Creamery Assn.*,
373 Or. 343 (2025) ........ 24

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal. 2014) ........ 15

*Bosland v. Warnock Dodge, Inc.*,
197 N.J. 543 (2009) ........ 23

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) ........ 6

*Breindel v. On Inc.*,
2026 WL 2355526 (D. Or. Aug. 13, 2026) ........ 11

*Brown v. Brita Prods. Co.*,
172 F.4th 1113 (9th Cir. 2026) ........ 18

*Bumpers v. Cmty. Bank of N. Va.*,
367 N.C. 81 (2013) ........ 24

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ........ 21

*Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*,
35 So. 3d 1053 (La. 2010) ........ 14

*City of Reno v. Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) ........ 33

*CLF 007 v. CooperSurgical, Inc.*,
2025 WL 975175 (D. Or. Mar. 31, 2025) ........ 28
*Cohon v. Oscar L. Paris Co.*,
17 Ill. App. 2d 21 (Ill. App. Ct. 1st Dist. 1958) ........ 29
*Cox v. Sears Roebuck & Co.*,
138 N.J. 2 (1994) ........ 14, 25
*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ........ 24
*De Bouse v. Bayer,*
*AG*, 235 Ill. 2d 544 (2009) ........ 23
*DiGiacinto v. RB Health (US) LLC*,
668 F. Supp. 3d 950 (N.D. Cal. 2023) ........ 10
*Digimarc Corp. v. Verance Corp.*,
2011 WL 7077315 (D. Or. Sept. 19, 2011) ........ 28
*Dix v. Am. Bankers Life Assurance Co.*,
429 Mich. 410 (1987) ........ 24
*DOD Technologies v. Mesirow Ins. Services, Inc.*,
887 N.E.2d 1 (Ill. Ct. App. 2008) ........ 30
*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) ........ 13, 21
*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ........ 21
*Easterbrook v. LinkedIn Corporation*,
2023 WL 3022497 (D. Or. April 20, 2023) ........ 31
*EBCF Enterprises, Inc. v. Erie Insurance Exchange*,
572 F. Supp. 3d 489 (N.D. Ill. 2021) ........ 19
*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ........ 33
*Federal Trade Commission v. Neovi, Inc.*,
604 F.3d 1150 (9th Cir. 2010) ........ 14
*Fred S. James & Co. v. E.G. Doll & Co.*,
104 Or. App. 508, 802 P.2d 86 (1990) ........ 28
*FTC v. Wyndham Worldwide Corp.*,
799 F.3d 236 (3d Cir. 2015) ........ 13
*General Motors Corp. v. Tracy*,
519 U.S. 278 (1997) ........ 7
*Gerlinger v. Amazon.com, Inc.*,
311 F.Supp.2d 838 (N.D.Cal.2004) ........ 30
*Gessele v. Jack in the Box, Inc.*,
427 F. Supp. 3d 1276 (D. Or. 2019) ........ 5, 27, 28
*Gore v. Ind. Ins. Co.*,
376 Ill. App. 3d 282 (2007) ........ 16, 21
*Great Am. All. Ins. Co. v. SIR Columbia Knoll Assocs. Ltd. P'ship*,
416 F. Supp. 3d 1098 (D. Or. 2019) ........ 26
*Greenberg v. Amazon.com, Inc.*,
3 Wn.3d 434 (Wash. 2024) ........ 13, 14

*Gregg v. Ameriprise Fin., Inc.*,
245 A.3d 637 (Pa. 2021) .......... 13, 25
*Grice v. Indep. Bank*,
147 F.4th 440 (4th Cir. 2025) .......... 26
*Gunn v. FCA US, LLC*,
2023 WL 5418736 (N.D. Cal. Aug. 22, 2023) .......... 15
*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) .......... 22
*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) .......... 12
*Harrison Sheet Steel Co. v. Lyons*,
15 Ill. 2d 532 (1959) .......... 29
*Hennessey v. Gap, Inc.*,
86 F.4th 823 (8th Cir. 2023) .......... 30
*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) .......... 8
*Home Owners Ins. Co. v. ADT LLC*,
109 F. Supp. 3d 1000 (E.D. Mich. 2015) .......... 20
*Howard v. Turnbull*,
316 S.W.3d 431 (Mo.App. W.D. 2010) .......... 30
*In re Google, Inc. Privacy Policy Litigation*,
2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) .......... 9
*In re iPhone Application Litigation*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .......... 9
*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .......... 21
*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*,
162 Wn.2d 59 (2007) .......... 18, 23
*Javor v. State Bd. of Equalization*,
12 Cal. 3d 790 (1974) .......... 21
*Johnson v. City of Shelby, Miss.*,
574 U.S. 10 (2014) .......... 20
*Johnson v. Phoenix Mut. Life Ins. Co.*,
266 S.E.2d 610 (N.C. 1980) .......... 13
*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 11, 12
*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 9, 29
*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) .......... 8
*Klein v. Arkoma Prod. Co.*,
73 F.3d 779 (8th Cir. 1996) .......... 30
*Klem v. Wash. Mut. Bank*,
176 Wn.2d 771 (2013) .......... 13, 16
*Kolar v. Nespresso USA, Inc.*,
2025 WL 1717279 (C.D. Cal. June 13, 2025) .......... 6, 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .......... 21, 22
*Landreneau v. Fleet Financial Group*,
197 F. Supp. 2d 551 (M.D. La. 2002) .......... 26
*Larisa's Home Care, LLC v. Nichols-Shields*,
362 Or. 115 (2017) .......... 27
*Laschober v. Cardona*,
2023 WL 4373652 (D. Or. July 6, 2023) .......... 10, 33
*Learning Resources, Inc. v. Trump*,
607 U.S. 229 (2026) .......... 1, 3, 16
*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... 4, 8
*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) .......... 18
*Lisk v. Lumber One Wood Preserving, LLC*,
792 F.3d 1331 (11th Cir. 2015) .......... 26
*Loeffler v. Target Corp.*,
58 Cal. 4th 1081 (2014) .......... 21
*Lokey v. CVS Pharmacy, Inc.*,
2020 WL 6822890 (N.D. Cal. Nov. 20, 2020) .......... 18
*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 33
*Lozano v. AT&T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007) .......... 16, 21
*LRY, LLC v. Lake Cty.*,
2018 WL 5300387 (D. Or. Oct. 25, 2018) .......... 27
*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 9
*Mansfield v. StockX LLC*,
802 F. Supp. 3d 1143 (N.D. Cal. 2025) .......... 7, 10
*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......... 4
*Marshall v. Miller*,
302 N.C. 539 (1981) .......... 14
*Martell v. Gen. Motors LLC*,
492 F. Supp. 3d 1131 (D. Or. 2020) .......... 25, 31
*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 5, 7, 10, 33
*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 6
*McClain v. Sav-On Drugs*,
6 Cal. 5th 951 (2019) .......... 21
*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) .......... 6, 8
*McKell v. Washington Mut., Inc.*,
142 Cal. App. 4th 1457 (2006) .......... 18

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) ..... 12
*Morgan v. AT&T Wireless Servs., Inc.*,
177 Cal. App. 4th 1235 (2009) ..... 23
*Motameni v. Adams*,
2022 WL 3682940 (D. Or. Aug. 25, 2022) ..... 28
*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) ..... 12
*NextWave Marine Sys., Inc. v. M/V Nelida*,
500 F. Supp. 3d 1162 (D. Or. 2020) ..... 30
*Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co.*,
933 A.2d 664 (Pa. Super. 2007) ..... 30
*Orkin Exterminating Co., Inc. v. F.T.C.*,
849 F.2d 1354 (11th Cir. 1988) ..... 13
*Pearson v. Philip Morris, Inc.*,
358 Or. 88 (2015) ..... 24
*Peterson v. Kitsap Community Federal Credit Union*,
171 Wash.App. 404, (Wash. Ct. App. 2012) ..... 30
*Plubell v. Merck & Co.*,
289 S.W.3d 707 (Mo. Ct. App. 2009) ..... 23
*Ports Petroleum Co. of Ohio v. Nixon*,
37 S.W.3d 237 (Mo. 2001) ..... 14
*Rosenblum v. First State Bank of Elgin*,
283 Or. 123, 581 P.2d 515 (1978) ..... 32
*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ..... 4
*Saunders v. Mich. Ave. Nat'l Bank*,
662 N.E.2d 602 (Ill. App. Ct. 1996) ..... 23
*Scherer v. Tapestry, Inc.*,
2026 WL 2575509 (D. Or. Aug. 31, 2026) ..... 31
*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
559 U.S. 393 (2010) ..... 26
*Shersher v. Superior Court*,
154 Cal. App. 4th 1491 (2007) ..... 22
*Siegel v. Levy Org. Dev. Co.*,
153 Ill. 2d 534 (1992) ..... 25
*Skinner v. Switzer*,
562 U.S. 521 (2011) ..... 20
*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ..... 22
*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..... 5
*Suncook Mills v. United States*,
44 F. Supp. 744 (D. Mass. 1942) ..... 17
*Town of New Hartford v. Connecticut Resources Recovery Auth'y*,
291 Conn. 433, 970 A.2d 592 (2009) ..... 28, 29

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5
*Trotta v. Am. Airlines, Inc.*,
2025 WL 1144779 (6th Cir. Apr. 18, 2025) .......... 31
*United States v. Am. Packing & Provision Co.*,
122 F.2d 445 (10th Cir. 1941) .......... 17, 32
*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 11
*Vetco Concrete Co. v. Troy Lumber Co.*,
256 N.C. 709 (1962) .......... 30
*Wall v. Automoney, Inc.*,
877 S.E.2d 37 (N.C. Ct. App. 2022) .......... 24
*Wayne County Produce Co. v. Duffy-Mott Co.*,
244 N.Y. 351 (1927) .......... 17
*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) .......... 18
*Wilson Area Sch. Dist. v. Skepton*,
860 A.2d 625 (Pa. Commw. Ct. 2004) .......... 31
*Zydus Worldwide DMCC v. Teva API Inc.*,
461 F. Supp. 3d 119 (D.N.J. 2020) .......... 30

**Statutes**

15 U.S.C. § 45 .......... 13
26 U.S.C. § 6416(a)(1)(A)–(B) .......... 15
815 Ill. Comp. Stat. Ann. 505/2 .......... 13
Cal. Bus. & Prof. Code § 17200 .......... 20
Cal. Civ. Code § 1770(a)(5) .......... 22
Cal. Civ. Code § 1782(a) .......... 33
Cal. Civ. Code § 1782(a), (d) .......... 23
Cal. Rev. & Tax. Code § 6901.5 .......... 21
La. Civ. Code art. 2299 .......... 32
La. Rev. Stat. § 51:1409(A) .......... 26
La. Stat. Ann. § 51:1406(4) .......... 13
Mich. Comp. Laws § 445.903(1)(cc) .......... 20
Mich. Comp. Laws § 445.903(1)(s) .......... 20
ORS 646.605(10) .......... 25
ORS 646.608(1)(e) .......... 20
ORS 646.608(1)(s) .......... 20
ORS 646.608(2) .......... 19
Wash. Rev. Code Ann. § 19.86.920 .......... 13

**Rules**

Fed. R. Civ. P. 15(a)(2) .......... 33
Fed. R. Civ. P. 8(d)(2) .......... 22
Fed. R. Civ. P. 9(b) .......... 25

**Regulations**

Mo. Code Regs. Ann. tit. 15, § 60-8.020 .......................................................................... 14

**Other Authorities**

Restatement (Third) of Restitution and Unjust Enrichment § 64 .......................................... 16, 17

## INTRODUCTION

In June 2025, Defendant Nike, Inc. ("Nike") explained how it would handle "the newly issued tariffs" imposed under the International Emergency Economic Powers Act ("IEEPA"). Facing "a gross incremental cost increase to NIKE of approximately $1 billion," Nike decided to impose "a surgical price increase in the United States," which it "intend[ed] to fully mitigate the impact of these headwinds." Decl. of Keara M. Gordon ("Gordon Decl."), ECF No. 42, Ex. 2 at 10–11; *see* ¶59[1]. Consumers, including each Plaintiff, paid those increases. ¶¶18–28.

In February 2026, the Supreme Court held that IEEPA did not authorize the tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026). Nike, as importer of record, is now being refunded the same tariff payments from the federal government. It has booked a $986 million "one-time benefit" from the refunds, "offsetting the IEEPA tariffs embedded within cost of sales," has already collected more than $300 million in cash, and has made no commitment to return any of it to the consumers who paid the increases. ¶¶8, 11, 82–84. Nike has thus recovered the same tariff dollars twice: once from its customers at the register, and again from the government.

This case is about that second recovery even though Nike's Motion to Dismiss, ECF No. 41 ("MTD"), treats it as a challenge to Nike's right to set prices. MTD at 1. Plaintiffs challenge Nike's decision—made in 2026, with full knowledge that its customers had paid the tariff costs—to keep the government's refund of those same costs. That conduct is unfair under the consumer protection statutes of each Plaintiff's state, and it is the paradigm of unjust enrichment. Plaintiffs seek restitution of what they overpaid; Nike's refund is what makes its retention of that money unjust and makes the money readily traceable.

---

[1] "¶" citations refer to the Consolidated Class Action Complaint ("CAC"), ECF No. 24 unless otherwise noted.

Nike's arguments largely address a different case. Its standing arguments ignore that each Plaintiff paid tariff-driven increases but received no refund from Nike. Its deception arguments are aimed at the moment of sale, not at Nike's retention of the refunds. Finally, its lead defense, the "composite price" doctrine, turns on a question of fact that cannot be resolved on the pleadings. Plaintiffs' alternative deception claims are adequately pled as well. For these reasons, more fully explained below, the motion should be denied.

## STATEMENT OF FACTS

Nike is a globally recognized athletic footwear and apparel company based in the United States with an extensive international supply chain for its products. Its footwear is made in 112 factories in 11 countries, and it contracts with 303 apparel manufacturers in 34 countries: Vietnam, Indonesia, and China account for most of its footwear production. ¶31. As a result, most, if not virtually all, of the products Nike sells in the United States are imported and subject to tariffs. ¶32.

### A. The IEEPA Tariffs Materially Increased Nike's Import Costs

In February 2025, the federal government imposed a series of tariffs on imported merchandise pursuant to the International Emergency Economic Powers Act ("IEEPA"). ¶¶33–36. Those tariffs applied to countries central to Nike's supply chain, which had the effect of materially increasing the cost of importing their products into the United States. ¶¶31–38.

As importer of record, Nike was required to remit the tariffs to U.S. Customs and Border Protection when covered merchandise entered the country. ¶39. The economic burden of tariffs did not remain entirely with importers. Businesses, such as Nike, responded to tariff-related cost increases by incorporating those costs into prices ultimately paid by consumers. ¶¶42–52. Economists describe this as tariff "pass-through." ¶¶47–50. Nike followed this pattern. ¶¶53–55.

**B. Nike Publicly Connected the Tariffs to Increased Consumer Prices**

Nike publicly acknowledged that the tariffs imposed substantial additional costs on its business and would affect the prices consumers paid for Nike products. ¶¶54, 56. Effective June 1, 2025, Nike raised prices by $5 to $10 on select footwear and $2 to $10 on adult apparel and equipment. ¶59; Gordon Decl. Ex. 1 at 1–2. Weeks later, describing "[Nike's] approach to the newly issued tariffs," Nike's Chief Financial Officer told investors that Nike faced "a gross incremental cost increase . . . of approximately $1 billion," had "implemented a surgical price increase in the United States with phased implementation beginning in fall '25," and "intend[ed] to fully mitigate the impact of these headwinds over time." Gordon Decl. Ex. 2 at 10–11; *see also* ¶53 nn.20–22 (June and October 2025 reports of Nike's tariff-related price increases).

**C. The Supreme Court Subsequently Held That IEEPA Did Not Authorize the Tariffs and Nike Now Benefits from Tariff Refunds**

On February 20, 2026, the Supreme Court held that IEEPA did not authorize the President to impose the tariffs at issue. *Learning Resources*, 607 U.S. 229; ¶¶63–71. The consequence of that ruling was that the IEEPA duties previously collected from importers became subject to refund. ¶¶72, 77–78. The refund process, however, was directed to the importers, instead of consumers who bore those costs through increased retail prices. ¶¶77–79.

During Nike's June 30, 2026, earnings call, it reported an "unplanned benefit related to tariffs" and stated that a refund associated with IEEPA tariffs had become probable. ¶82. Nike recognized approximately $986 million associated with that anticipated tariff recovery, which it described as offsetting IEEPA tariffs previously embedded in cost of sales. The tariff recovery benefited Nike's reported gross margin by approximately 900 basis points during that quarter. ¶¶82–83. Yet, as of today, Nike has made no commitment to pass the corresponding refund benefit to the consumers who bore tariff-related price increases. ¶¶11, 82–84.

### D. Plaintiffs Paid Tariff-Inflated Prices and Have Received No Corresponding Refund

The named Plaintiffs in this consolidated complaint reside in nine states. ¶¶18–28. Each alleges that during the Class Period they purchased Nike goods imported from countries subject to the IEEPA tariffs; paid retail prices that Nike had increased to account for those tariffs; and would not have paid those higher prices absent Nike's pass-through of the tariff costs and that, to date, Nike has not provided any of them with a refund. *Id*.

## LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion if it pleads "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A plaintiff is not required to plead "detailed factual allegations," nor does Rule 8 demand "heightened fact pleading of specifics." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Court must accept the complaint's factual allegations as true and construe them in the light most favorable to Plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal is improper where the allegations raise the right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

## ARGUMENT

### A. PLAINTIFFS HAVE ARTICLE III STANDING

Nike challenges Plaintiffs' standing under Rule 12(b)(1) on the face of the Complaint. MTD at 10. A facial attack "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). The Court resolves such an attack as it would a Rule 12(b)(6) motion, "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Id.*

Article III asks whether Plaintiffs suffered a concrete injury, whether that injury is fairly traceable to Nike's conduct, and whether the requested relief can redress it. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs allege that Nike caused them to pay more for its products by passing unlawful tariffs through to consumers, then recovered those same tariff costs from the government and kept the refunds. ¶¶18–28, 59, 61, 72–75, 82–84. Loss of money is the most basic concrete injury. "If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Plaintiffs paid Nike prices that included tariff-driven increases. The purchases created the loss, and Nike's retention of the refund is what makes it unjust.

Plaintiffs' three distinct bases for economic injury are: (1) Nike's retention of money in which Plaintiffs hold a legally recognized interest; (2) payment of higher prices induced by Nike's misrepresentations and/or material omissions; and (3) payment of more than the goods were worth because the prices included amounts attributable to invalid tariffs. *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) recognizes these forms of injury as "actual and concrete economic injuries." *Id.* at 1069.

**1. Plaintiffs Allege Concrete Economic Injury**

Nike fails to address, and thus waives, Plaintiffs' standing regarding Nike's retention of IEEPA tariff refund money to which Plaintiffs have a superior recognized interest. Nike focuses entirely on point-of-sale arguments, claiming never to have promised to refund future illegal tariff returned to Nike, MTD at 15, but Nike neglects to address Plaintiffs' central point: that Nike injured Plaintiffs by retaining refunded tariffs that were paid by Plaintiffs. Restitution does not depend on a point-of-sale promise but instead on the unjustness of retaining money "compensated or reimbursed by a third party for costs or expenditures incurred by [Plaintiffs]". Restatement (Third) of Restitution and Unjust Enrichment (2011), § 48 comment e *quoted in Gessele v. Jack*

*in the Box, Inc.*, 427 F. Supp. 3d 1276, 1336 (D. Or. 2019). Thus, Nike has waived its standing argument as to Plaintiffs' primary theory of economic injury.

**a. Nike's Deception Argument Fails**

Nike asserts that "there is no affirmative representation or omission pled" and that overpayment injuries require deceit. MTD at 12–13. But the Complaint expressly alleges that Nike represented tariff-related charges as "lawfully authorized" and presented them as "legitimate, legally mandated charges" without disclosing their questionable legal validity. ¶104; *see also* ¶¶130, 140, 150, 160, 170, 180. Each Plaintiff alleges paying prices Nike increased due to tariffs and that they would not have paid those higher prices absent Nike's pass-through. ¶¶18–28.

*First*, Nike's alleged misrepresentations and omissions support an overpayment theory. A consumer suffers Article III injury by paying more than she otherwise would have paid because of deceptive claims or material nondisclosures. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012); *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1145 (9th Cir. 2024). Plaintiffs identify the misleading premise of the increased prices—the asserted legal legitimacy of the tariff component. ¶¶18–28, 104, 108. Nike's objections to the particularity of the deception allegations do not establish that the pleaded monetary loss is an unrecognized injury.

*Second*, Nike's argument that a consumer cannot establish overpayment injury without an actionable misrepresentation or omission would improperly eliminate the independent claim of objective overpayment. Nike relies on *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 707–08 (9th Cir. 2020) as its chief authority on this point. But *McGee* expressly declined to decide whether an overpayment theory requires a misrepresentation in every case. *Id.* at 707–08. *Bowen* subsequently reaffirmed that misrepresentations or actionable nondisclosures are "typically" required but expressly preserved *McGee*'s open question. 118 F.4th at 1145 & n.10. Even *Kolar v. Nespresso*

*USA, Inc.*, 2025 WL 1717279 (C.D. Cal. June 13, 2025), *adopted*, 2025 WL 1717278 (C.D. Cal. June 16, 2025), expressly acknowledges that this remains an open question. *Id.* at *4.

The Complaint supplies the basis for the excess payment: discrete increases of $5–$10 for selected footwear and $2–$10 for adult apparel and equipment, imposed to recover tariff costs from consumers. ¶¶59, 61. It alleges that the tariffs were void from inception, that Plaintiffs paid the resulting inflated prices, and that Nike recovered the corresponding costs without returning the consumer payments. ¶¶18–28, 72–75, 82–84, 108, 115.

Payment of an allegedly unlawful charge can establish concrete injury independently of deception. *Maya*, 658 F.3d at 1069, recognized economic injury from overpayment, citing *General Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997), which found standing based on tax-related overpayment without deception. Likewise, *Mansfield v. StockX LLC*, 802 F. Supp. 3d 1143, 1151–53 (N.D. Cal. 2025), separately recognized unlawful-charge injury and deception-based overpayment, holding that disclosure of the challenged fee before purchase did not defeat standing.

Nike also mischaracterizes Plaintiffs' injury as retrospective. MTD at 13–14. Plaintiffs allege that the tariffs were unlawful when imposed and that they paid those inflated prices. ¶¶72, 75, 108. Their loss arose when they paid prices that included the tariff-driven increases. The latter ruling and refunds confirmed the tariffs' invalidity and Nike's recovery of the costs, and they are what make Nike's retention of Plaintiffs' money unjust.

**b. Delivery of the Products Does Not Eliminate Loss**

Nike next attacks an unpled theory when it argues that Plaintiffs received the benefit of their bargain because they bought the advertised products at the advertised prices, and that Nike never promised to refund any part of those prices. MTD at 14–15. But Plaintiffs do not allege that Nike promised an additional product benefit or a refund that has gone unfulfilled, but rather that

Nike overcharged them to compensate for invalid tariffs and is now unjustly retaining both those overcharge amounts and the refunds of those tariffs.

Receipt of the advertised products at the advertised prices does not defeat the alleged injury. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) rejected the same benefit-of-the-bargain defense where material misrepresentations induced the purchase, even though the consumer received and retained non-defective goods. *Id.* at 1107–08. Thus, delivery of usable shoes or apparel does not answer Plaintiffs' allegation that Nike's misleading presentation of the tariff-driven price increases caused them to pay more. ¶¶104, 108.[2]

Nike's authority, *McGee*, 982 F.3d at 705–08, analyzed benefit-of-the-bargain and overpayment theories and its rejection of one did not dispose of the other. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009), likewise rejected an asserted benefit that was never part of the bargain. Here, Plaintiffs identify the price increases attributable to the invalid tariffs and allege that those amounts caused an actual financial loss. ¶¶59, 61, 72–75, 108.

**c. The Complaint Alleges Injury to Every Named Plaintiff**

Nike's third argument disregards what each named Plaintiff alleges: purchasing goods from Nike, paying prices increased to account for tariffs, and receiving no refund of those amounts after Nike received refunds from the government for those same tariffs. MTD at 15–16; ¶¶18–28. These allegations identify a personal financial loss. Nike disputes whether those payments occurred, but its motion expressly presents a facial standing challenge (MTD at 10), where the Court must accept the well-pleaded facts and draw reasonable inferences in Plaintiffs' favor. *Leite*, 749 F.3d at 1121.

---

[2] Nike cites to *Kim v. Carter's Inc.*, 598 F.3d 362, 365–66 (7th Cir. 2010). MTD at 12 n.5. But that case merely rejected a fictitious-discount claim, under Illinois law, because plaintiffs failed to allege that the goods were worth less than the price paid or that a better price was available—it did not decide Article III standing.

Plaintiffs need not supply the transaction-by-transaction evidence Nike argues is required. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Nike's references to excluded product categories, discounts, and phased implementation do not contradict those well-pleaded purchase allegations. MTD at 16. The Complaint identifies products subject to increases and defines the Class to include purchases at prices that included IEEPA tariffs. ¶¶59, 85. Likewise, Nike raises a factual dispute as to when, precisely, it raised prices, MTD at 15, but Plaintiffs' well-pled allegation identifies this date, and at any rate Nike's alternative date falls within the alleged Class Period. MTD at 6–7, 16. Nike thus asks the Court to infer that Plaintiffs did not pay the challenged amounts despite their express allegations that they did. Even incorporation by reference does not permit the Court to adopt disputed factual inferences to defeat well-pleaded allegations. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

The cases Nike cites involved missing allegations of personal harm, not a defendant's disagreement with an *expressly alleged financial loss. Birdsong*, 590 F.3d at 960–61, relied on a hypothetical hearing risk to other users. *In re iPhone Application Litigation*, 2011 WL 4403963, at *4–6 (N.D. Cal. Sept. 20, 2011), failed to identify harm any named plaintiff suffered from any defendant's collection of data, and *In re Google, Inc. Privacy Policy Litigation*, 2012 WL 6738343, at *4–6 (N.D. Cal. Dec. 28, 2012), sought replacement-phone costs no plaintiff alleged incurring. Here, every Plaintiff alleges paying the tariff-driven increases. ¶¶18–28.[3]

---

[3] Any further purchase detail can be supplied by amendment. *See* Section F.

**2. Plaintiffs' Loss Is Fairly Traceable to Nike's Conduct**

Nike finally challenges traceability and argues that Plaintiffs fail to exclude the "myriad" other factors considered in pricing and speculates that maybe third parties set the prices. MTD at 16–17. Article III traceability does not require proximate causation; it only requires a plausible causal connection. *Maya*, 658 F.3d at 1070. The Complaint identifies that connection: Nike imposed tariff-driven price increases, Plaintiffs paid them, and Nike retained the amounts after recovering the corresponding tariffs from the government. ¶¶18–28, 59–61, 82–84. Nike's tariff-related increases need not be the sole cause of Plaintiffs' higher payments. *Maya* held that allegations linking defendants' conduct to inflated purchase prices sufficiently established causation despite other economic influences. *Maya*, 658 F.3d at 1070.[4] Nike's speculation that third-party retailers set Plaintiffs' prices disregards the Complaint: each named Plaintiff alleges purchasing goods "from Nike" at prices Nike increased to account for tariffs. ¶¶18–28. Even assuming an intermediary sale, subsequent retail pricing does not necessarily sever causation. *DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 959–60 (N.D. Cal. 2023), rejected that argument where the manufacturer's misleading presentation plausibly caused the purchaser's overpayment.[5]

**B. THE CONSUMER PROTECTION CLAIMS ARE ADEQUATELY PLED**

Nike's attack on the consumer protection claims rests on the mischaracterization that Plaintiffs are asking the Court to second-guess what Nike charges for its shoes, apparel, and

---

[4] *Laschober v. Cardona*, 2023 WL 4373652, at *4–5 (D. Or. July 6, 2023), on which Nike relies (MTD at 16), involved injury that depended on the Federal Reserve's discretionary decisions; here, the price increases were Nike's own, which Nike tied to the tariffs. ¶¶59–61.

[5] *See also Mansfield*, 802 F. Supp. 3d at 1152 (consumer's decision to pay did not displace seller's conduct as cause of loss).

equipment. This is not the case. Rather, Nike identified a specific cost, the IEEPA tariffs, as the reason for its "surgical" price increases. ¶¶56–59; Gordon Decl. Ex. 2 at 10–11. Nike then collected that cost from consumers. ¶¶55, 61, 73. Now Nike is collecting the same cost from the federal government, booked $986 million in IEEPA refunds as a "one-time benefit," received more than $300 million in cash, and refuses to return any of it to the consumers who paid the IEEPA tariffs. ¶¶8, 11, 82–84. The result is that Nike recovers the same tariff dollars twice. That double recovery is the unfair and deceptive practice at issue.

**1. Rule 9(b) Does Not Bar the Consumer Protection Claims**

Rule 9(b) applies only to averments of fraud. Where fraud is not an essential element of a claim, "only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard," and the remaining allegations "need only satisfy the requirements of Rule 8(a)(2)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)).

Plaintiffs' lead theory—that Nike may not keep both the consumers' payment of a tariff cost and the government's refund of the same cost—does not sound in fraud, so Rule 9(b) does not apply to it. *See Kearns*, 567 F.3d at 1124; *Vess*, 317 F.3d at 1105. Plaintiffs allege that Nike charged consumers for a tariff cost and then recovered that same cost from the government while keeping both. ¶¶105, 107, 131, 133, 141, 143, 151, 153, 161, 163, 171, 173, 181, 183, 190–98, 214–20, 226, 229. Those allegations would be unfair even if every word Nike spoke were true. Nike itself cites this Court's holding that UTPCPL claims of deceptive conduct are not subject to Rule 9(b). MTD at 17 n.7 (citing *Breindel v. On Inc.*, 2026 WL 2355526, at *4 (D. Or. Aug. 13, 2026)). Nike also acknowledges that the WCPA claim "may not be subject to Rule 9(b)." *Id.* Rule 9(b) therefore cannot support dismissal of those claims. And because fraud is not an essential

element of the other consumer protection claims, only the averments of fraud, if any, are tested under Rule 9(b). *Kearns*, 567 F.3d at 1124–25.

Even if Rule 9(b) does apply, the Complaint satisfies that standard. The complaint pleads the conduct at issue in detail, stating that beginning on or about June 1, 2025, through the end of the tariff period, Nike implemented discrete price increases that it tied to an estimated $1 billion tariff impact. ¶¶4, 59, 60, 85, 103. That identifies the who, what, when, where, and how of the conduct at issue: Nike's $5–$10 and $2–$10 increases, beginning June 1, 2025, tied to a quantified tariff cost on its June 26, 2025 earnings call. Gordon Decl. Ex. 2 at 10–11.

Rule 9(b) is applied with less rigor to omissions, because a plaintiff cannot identify the time and place of a statement that was never made. *See Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007). The standard is likewise relaxed as to matters within the defendant's knowledge. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Nike's refund strategy, its internal pricing calculations, and its plans for pursuing those refunds, fall squarely in that category.

**2. Plaintiffs Plead Unfair, Unethical, and Unconscionable Practices**

Each of the consumer protection statutes at issue, the UCL, WCPA, ICFA, NJCFA, MMPA, NCUDTPA, and LUTPA, prohibits unfair, unconscionable, or unethical conduct as a freestanding wrong, independent of deception.[6] Because the statutes' tests largely overlap, Plaintiffs address them together here; Section B.4.c notes only what is distinct under California law. The rule from *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017) where the UCL claim was dismissed, only applies where the unfair practice "overlap[s] entirely"

---

[6] Plaintiffs do not proceed under the anticompetitive prongs of the UCL or the WCPA (MTD at 29–30), they challenge Nike's conduct toward consumers. ¶¶191, 214–20.

with a failed fraud theory. MTD at 24. Plaintiffs' unfairness theory does not depend on deception at all. Nor is this a case like *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020), cited by Nike, where the court was left "to guess what conduct" was unfair. The complaint identifies the unfair conduct in each count, including charging customers tariff-increased prices and retaining tariff refunds despite having passed the costs to its customers. ¶¶105, 131, 141, 151, 161, 171, 181, 190, 214, 226.[7]

**a. Plaintiffs Satisfy the FTC Balancing Act Test**

Plaintiffs' principal theory satisfies the three factor "substantial-injury test" applied under the FTC Act. Courts look to the FTC Act for guidance when interpreting state consumer protection statutes. *See, e.g., Johnson v. Phoenix Mut. Life Ins. Co.*, 266 S.E.2d 610, 620 (N.C. 1980); 815 Ill. Comp. Stat. Ann. 505/2; La. Stat. Ann. § 51:1406(4); Wash. Rev. Code Ann. § 19.86.920; *Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434, 455–60 (Wash. 2024).

Under the FTC Act, 15 U.S.C. § 45, an act or practice is "unfair" if it (1) causes or is likely to cause substantial injury to consumers, (2) that consumers cannot reasonably avoid, and (3) that is not outweighed by countervailing benefits to consumers. *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 244 (3d Cir. 2015). The conduct supporting these factors need not also be deceptive. *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1367 (11th Cir. 1988) ("[W]hile a practice may be both deceptive and unfair, it may be unfair without being deceptive."). *See also Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 785–87 (2013) (same under WCPA).

---

[7] Nike contends that the UTPCPL has no "unfair" prong (MTD at 24 n.9), but Plaintiff Dunn's claim does not depend on one. The catchall reaches deceptive conduct, which need only be capable of being interpreted in a misleading way, and the statute is construed broadly. *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 641, 648–50 (Pa. 2021).

*First*, substantial injury may arise from "a small harm to a large number of people." *Federal Trade Commission v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010). That is what Plaintiffs allege here. Millions of consumers paid tariff-attributed increases on Nike goods, and Nike has booked $986 million in refunds of those same tariffs. ¶¶8, 13, 82–84. *Second*, those injuries were not reasonably avoidable, which turns on whether consumers had a "free and informed choice," including reason to anticipate the harm and a practical means to avoid or mitigate it. *Greenberg*, 3 Wn.3d at 460–62. In this case, no consumers could have avoided at the point of sale a decision Nike made months later to keep refunds of the cost the consumer had just paid. ¶¶107, 195. And *third*, Nike's retention of a duplicate recovery does not confer any countervailing benefit on consumers. It is a windfall and only benefits Nike. ¶¶83, 107, 197. Nothing more is required.

**b. Plaintiffs Have Alleged Nike's Conduct Is Otherwise Unfair, Unconscionable, Unethical, or Violates Established Public Policy**

In North Carolina, a practice is unfair when it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and the defendant's good faith is no defense. *Marshall v. Miller*, 302 N.C. 539, 548 (1981). Missouri's statute reaches "every unfairness to whatever degree." *Ports Petroleum Co. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001); *see* Mo. Code Regs. Ann. tit. 15, § 60-8.020. New Jersey measures an unconscionable commercial practice against a standard of "good faith, honesty in fact and observance of fair dealing." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994). Even Louisiana's comparatively narrow standard reaches conduct involving "fraud, misrepresentation, deception, *or* other unethical conduct." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1059 (La. 2010) (emphasis added). Keeping the government's refund of the cost already paid by consumers is unethical and unconscionable conduct in any ordinary sense of those terms.

A merchant may raise its prices to cover increased costs, MTD at 25–27, however, none of Nike's cited cases involve a seller that attributed an increase to a specific government exaction and then later recovered that same exaction from the government. *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1171 (C.D. Cal. 2014) (dismissing claims), *aff'd*, 649 F. App'x 424 (9th Cir. 2016), cited by Nike, confirms the distinction. It held only that there is "no predicate for adjudicating the alleged 'unfairness' of [a product's] price." MTD at 27. Plaintiffs ask the Court to adjudicate the fairness of a double recovery, not the fairness of a price at sale.

Nike invokes the principle that courts should not determine "how much of a profit is fair." MTD at 29 (quoting *Gunn v. FCA US, LLC*, 2023 WL 5418736, at *4 (N.D. Cal. Aug. 22, 2023)). Plaintiffs do not ask the Court to set Nike's margin or reevaluate pricing decisions. Nike's own accounting treats the refund as a windfall, not as compensation for a cost it bore. ¶¶82–83, 115. Plaintiffs simply ask the Court to treat the refunds in the same way, and hold that Nike may not keep both the consumers' payment of a cost and the government's refund of the same.

Finally, Nike argues that no statute or legislative policy requires it to pass refunds through to consumers. MTD at 25. But the policy test does not require a statute that forbids the precise conduct. It asks whether the conduct offends established public policy, and the policy here is settled: a seller that passes a government charge on to its customers may not keep the refund. For example, Congress conditions excise-tax refunds on proof that the seller "has not included the tax in the price of the article" or "has repaid the amount of the tax to the ultimate purchaser." 26 U.S.C. § 6416(a)(1)(A)–(B). The Supreme Court endorsed the same principle in a case concerning invalidated New Deal processing taxes: if a taxpayer "has shifted the burden to the purchasers, they and not he have been the actual sufferers and are the real parties in interest." *Anniston Mfg. Co. v. Davis*, 301 U.S. 337, 350 (1937) (citation omitted). The Supreme Court has held that IEEPA

did not authorize the tariffs. *See Learning Res.*, 607 U.S. 229. Those tariffs were exactions the government had no authority to collect, and consumers bore them. That Congress wrote pass-through conditions into the statutes governing certain excise-tax refunds does not suggest that a seller may keep a refund where no such condition exists. The Restatement describes the passing-on defense as "firmly established in American restitution law by case law and statute," and recognizes that the absence of a statutory refund procedure for purchasers "does not preempt a legal remedy guided by principles of unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 64 cmt. b. In any event, Plaintiffs prevail if they satisfy the substantial-injury or balancing test, without the need to identify a statute. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007); *Klem*, 176 Wn.2d at 787.

**c. The Composite-Price Doctrine Does Not Apply**

Nike responds to Plaintiffs' unfairness argument by resting on a line of contract and restitution cases holding that a buyer may not recover a later-invalidated tax that was "absorbed" in a "total or composite price." MTD at 27–29.[8] But those cases do not address whether a seller's conduct is unfair under a consumer protection statute, and none of them applies the FTC-derived, balancing, or unethical-conduct tests.

In any event, the doctrine does not fit the facts. By Nike's own account, it turns on whether a tax was "absorbed in the total price" or passed through "in addition to the stated price." MTD at 4, 27. Whether Nike's increases functioned as a composite price or as an identifiable pass-through

---

[8] *Gore* is plainly distinguishable on its facts. *Gore* involved an insurer's privilege tax built into premium rates, and the court treated the claim as an effort to "rewrite" the parties' insurance contracts. *Gore v. Ind. Ins. Co.*, 376 Ill. App. 3d 282, 287–88 (2007). Nothing in *Gore* involved a seller that publicly identified the specific exaction as the reason for discrete increases on targeted goods. *Gore* also treats whether a tax was absorbed in a composite price or added to it as "one of contract construction." 376 Ill. App. 3d at 288.

is a question of fact that cannot be resolved on the pleadings. Nike's own authorities treat the question as one of the parties' intent. *See* Restatement (Third) of Restitution and Unjust Enrichment § 64 cmt. b (separate itemization "cannot be the true test, because the court must ultimately ascertain the intention of the contracting parties.")[9]

Prior to Plaintiffs' Complaint, Nike did not treat the price as a "composite." Nike's Chief Financial Officer presented a "surgical price increase in the United States" as one of four measures to offset a quantified "gross incremental cost increase . . . of approximately $1 billion" from "the newly issued tariffs," an impact Nike "intend[ed] to fully mitigate." Gordon Decl. Ex. 2 at 10–11; ¶59. Nike applied those increases to tariff-affected goods in discrete price amounts (¶¶59, 61, 75), and describes them as "surgical," "phased," and limited to some categories. MTD at 2, 7. A targeted increase designed to recover a specific, quantified cost is the opposite of a tax that disappears into a blended price. Nike later reported the refund as "offsetting the IEEPA tariffs embedded within cost of sales." ¶82. Thus, Nike isolated, quantified, and reported that cost to investors, meaning it was not lost in a composite price. *See Wayne County Produce Co. v. Duffy-Mott Co.*, 244 N.Y. 351, 353 (1927) (allowing buyer to recover a misapplied tax because "the item of the tax" was not "absorbed in a total or composite price.")

**3. Plaintiffs Adequately Allege Deception**

Plaintiffs also state distinct claims under the deceptive prongs of the consumer statutes that govern their claims. Whether a business practice is likely to deceive a reasonable consumer is

---

[9] The Restatement provision Nike cites reflects the concern that whether a tax is passed on may be too "various and complex" to assume. Restatement (Third) of Restitution and Unjust Enrichment § 64 cmt. b. That concern disappears where, as here, the amount passed on is "definite and ascertainable." *United States v. Am. Packing & Provision Co.*, 122 F.2d 445, 448 (10th Cir. 1941); *Suncook Mills v. United States*, 44 F. Supp. 744, 746 (D. Mass. 1942); *see also* Section C.1.

ordinarily a question of fact. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008). Nike's deception argument targets one strand of the complaint, in that Nike represented the tariffs were "lawfully authorized." MTD at 19–21. Plaintiffs' deception theory does not turn on whether the tariffs were lawful. Nike presented its price increases as a pass-through of a government cost, never disclosed that it would seek reimbursement of that same cost, and has kept both payments.

**a. Nike's Presentation of Its Price Increases Was Misleading**

Nike publicly tied its price increases to the tariffs, presenting them as a means to offset an estimated $1 billion tariff cost. ¶59; Gordon Decl. Ex. 2 at 10–11. A reasonable consumer would understand those increases as a pass-through of a government exaction—money bound for the government, not for Nike. ¶¶61, 74. That is no longer true: Nike has recovered and booked those same tariff dollars as a "one-time benefit." ¶¶82–83. Presenting a charge as a pass-through of a government-imposed cost can mislead consumers about where their money goes. *See McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1472 (2006); *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 78 (2007). Nike's cited price-disclosure cases (MTD at 20) involved disputes over the price itself; Plaintiffs here instead allege they were misled about the nature of the increases, the kind of "other deception" that makes pricing actionable. *Lokey v. CVS Pharmacy, Inc.*, 2020 WL 6822890, at *4 (N.D. Cal. Nov. 20, 2020).

The omission is actionable under Nike's own standard: it is "contrary to a representation actually made by the defendant." MTD at 21 (quoting *Brown v. Brita Prods. Co.*, 172 F.4th 1113, 1118 (9th Cir. 2026). Nike represented that its price increases offset tariff costs; it did not disclose that it would seek and keep refunds of those same costs. ¶¶11, 79, 82–84, 214. A duty to disclose also arises from partial representations and from a defendant's exclusive knowledge of material facts. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336–38 (1997). Nike's "public knowledge" cases

(MTD at 21–22) are inapposite. The public knew importers were challenging the tariffs (¶41), not that Nike would keep refunds of costs it had already collected from consumers.

**b. Plaintiffs' Deception Claims Do Not Depend on Hindsight**

Nike recasts the complaint as alleging that its statements became false only after *Learning Resources*. MTD at 22–23. The retention claim rests on no earlier statement; it challenges what Nike did in 2026, when it received a quantified refund of the very charge it had passed on. That is not hindsight, it is accounting. Presenting a contested, potentially refundable exaction as a final cost, without disclosing that contingency, was misleading when made.[10]

**4. Plaintiffs Plead Violations of the UTPA, MCPA, UCL, and CLRA**

**a. UTPA**

Oregon's UTPA makes it an unlawful practice to make "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services," and subsection (2) provides that a representation "may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." ORS 646.608(2). Nike asserts that Plaintiffs "do not . . . claim Nike made false representations about its prices." MTD at 31. However, the Complaint alleges exactly that: Nike represented its price increases as a pass-through of its tariff cost—a representation about "the person's cost for . . . goods"—without disclosing that it would seek and keep reimbursement of that same cost. ¶¶58–61, 104, 214. That representation was misleading because it omitted that Nike would recover the cost from the government and keep both payments. ¶¶82–84. The same conduct falls within subsection (1)(e), which reaches

[10] *EBCF Enterprises, Inc. v. Erie Insurance Exchange*, 572 F. Supp. 3d 489, 497 (N.D. Ill. 2021), cited by Nike, involved an insurance premium that seemed too high in retrospect; no third party returned any part of it to the insurer.

representations that goods have "characteristics . . . benefits . . . or qualities" they do not have, because Nike presented the tariff-driven portion of its prices as money bound for the government. ORS 646.608(1)(e).[11]

#### b. MCPA

Nike asserts that Plaintiffs "do not invoke any specific provision of the MCPA." MTD at 31. That is not accurate. The complaint quotes the operative language of Mich. Comp. Laws § 445.903(1)(s): "failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." ¶158.

The omission alleged here fits that provision: Nike attributed its price increases to the tariff cost but did not disclose that it planned to recover, and keep, refunds of that same cost. It also fits Mich. Comp. Laws § 445.903(1)(cc), which prohibits failing to reveal facts that are material in light of representations made in a positive manner. Nike's authorities dismissed MCPA claims where the plaintiff identified no provision and the conduct fit none. *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1008–09 (E.D. Mich. 2015). As with the UTPA, Plaintiffs need not cite the subsection by number. *See* Section B.4.a.

#### c. UCL and CLRA

Nike briefs the UCL claim as a misrepresentation case, invoking Rule 9(b), reliance, and "fraud by hindsight" as if Plaintiffs proceeded under the "fraudulent" prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* MTD at 17–23, 32–34. They do not. Plaintiffs challenge Nike's "retaining tariff refunds despite having passed the costs to its

---

[11] Although the complaint does not cite ORS 646.608(1)(s) by subsection number, Plaintiffs were required to plead facts—not legal theories. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011); *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).

customers." CAC ¶ 190. Whatever Nike said at the register, the unfair prong asks about its retention of the refund, on which Nike has been silent. Collecting the same dollar twice is "unfair" under the UCL. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

**i. Keeping the Refund Is Unfair Under Every Test**

California's unfairness tests ask the same questions addressed in Section B.2. *Doe*, 982 F.3d at 1214–15; *Lozano*, 504 F.3d at 735–36. The conduct satisfies each for those reasons. California also shares the policy against sellers keeping refunds of charges their customers bore: "[p]urchasers are entitled to their refund from the retailers." *Javor v. State Bd. of Equalization*, 12 Cal. 3d 790, 802 (1974); *see* Cal. Rev. & Tax. Code § 6901.5.[12] And Nike's point that it passed through "only a portion" of the tariffs, MTD at 2, 7, goes to the amount of restitution, not liability.

**ii. Nike's Defenses Miss the Retention Theory**

Nike's composite-price defense fails for the reasons in Section B.2.c, and its out-of-state contract cases, *e.g.*, *Gore*, 376 Ill. App. 3d at 288, do not define unfairness under the UCL. Because Plaintiffs proceed under the unfair prong, Rule 9(b) does not apply, *see* Section B.1 (addressing *Kearns*), and reliance is not required, *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010). Plaintiffs plead lost money and causation. ¶¶24–25, 194, 196.

**iii. Restitution Fits the Wrong, and *Sonner* Does Not Bar It**

Restitution would return what Plaintiffs overpaid because of the tariff pass-through, money in which they have "an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.

---

[12] *Loeffler v. Target Corp.*, 58 Cal. 4th 1081 (2014), and *McClain v. Sav-On Drugs*, 6 Cal. 5th 951 (2019), are not to the contrary. Both rest on the tax code's "exclusive" refund scheme, *Loeffler*, 58 Cal. 4th at 1102, which has no tariff counterpart (¶78) and *Loeffler* itself preserved the *Javor* route to consumer refunds, *id.* at 1101.

4th 1134, 1149 (2003); ¶¶24–25, 194. Nike's refund removes any justification for keeping that money and confirms it is traceable.[13]

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), does not bar that remedy. *First*, the retention is ongoing: Nike is still collecting the balance of its refund (¶¶9–10, 82, 84) and still retains the portions it has already collected. Only an injunction can stop it. *Second*, restitution does not require the reliance, intent, or ascertainable loss that Nike says defeats the legal claims (MTD at 30–35) and "[a] remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient." *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937). *Third*, Plaintiffs may plead in the alternative. Fed. R. Civ. P. 8(d)(2); *see* ¶¶117, 207. In any event, a *Sonner* dismissal must be without prejudice. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314–15 (9th Cir. 2022).

**iv. The CLRA Claim Is Adequately Pled**

The CLRA claim rests on the same representations. Section 1770(a)(5) prohibits representing that goods have "characteristics" or "benefits" that "they do not have." Cal. Civ. Code § 1770(a)(5); ¶203. Nike presented the tariff-driven portion of its prices as a pass-through of a government charge (¶¶58–59, 61) while omitting what it alone knew: that the charge was contested and that Nike would seek, and keep, any refund of it. ¶¶41, 104, 106, 214. A reasonable consumer would understand that portion of the price as money bound for the government, not additional revenue for Nike (¶¶61, 74) and the omission is actionable for the reasons in Section B.3.a. As for notice, it is required only for damages, and a claim filed without it "must simply be dismissed until

[13] Nike's retailer point, MTD at 16, fails: restitution reaches manufacturers whose goods were bought through retailers. *Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (2007). Nor do Plaintiffs seek non-restitutionary disgorgement. *See Korea Supply*, 29 Cal. 4th at 1148–52.

30 days or more after the plaintiff complies." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1261 (2009); Cal. Civ. Code § 1782(a), (d). Any defect is curable. *See* Section F.

**5. Plaintiffs Adequately Plead Causation and Reliance, Where Required**

**a. Causation**

Nike's causation argument assumes that every claim turns on a misstatement each Plaintiff saw or heard, MTD at 32–33, but the unfairness claims do not. Their causal chain is direct, as each Plaintiff paid a tariff-attributed increase on Nike goods, and Nike then recovered the tariff underlying that increase and kept it. ¶¶18–28, 108, 196, 217, 220. But for that conduct, Plaintiffs' tariff payments would not now sit on Nike's books as a "one-time benefit." ¶¶82–84.[14] That causal nexus is all that several of the statutes require. The NJCFA requires an ascertainable loss causally connected to the unlawful practice, not reliance. *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). The MMPA likewise dispenses with reliance and does not require that an unlawful practice caused a purchase. *Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009). The WCPA requires but-for causation, which a plaintiff may establish without showing reliance on any representation. *Indoor Billboard*, 162 Wn.2d at 83–85.

Illinois is no different for unfairness claims. An ICFA deception claim may require that the plaintiff actually have been deceived (*see De Bouse v. Bayer AG*, 235 Ill. 2d 544, 554–55 (2009)), but an unfairness claim does not. A plaintiff may allege that conduct is unfair under ICFA without alleging deception. *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996).

[14] Nike also repeats its standing challenge: that Plaintiffs have not plausibly alleged that they purchased tariff-affected goods. MTD at 33. That argument is addressed in Section A.

**b. Reliance**

Nike treats reliance as a uniform element across the statutes. MTD at 33–34. It is not. Where reliance is required, it takes a form the complaint satisfies at the pleading stage. Under California law, a plaintiff proceeding on an omission theory establishes reliance by showing that the omitted information was material, meaning that had it been disclosed, the plaintiff would have been aware of it and behaved differently. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). A reasonable consumer would consider it material that the "tariff" portion of a price increase would be refunded to the seller and kept. The California Plaintiffs allege that they would not have paid the increased prices absent Nike's pass-through of the tariffs. ¶¶24–25.

Michigan and North Carolina are similarly forgiving. In a Michigan class action, members need not individually prove reliance where a reasonable person would have relied on the misrepresentation or omission. *Dix v. Am. Bankers Life Assurance Co.*, 429 Mich. 410, 418 (1987). North Carolina requires reliance only where the claim rests on a misrepresentation. *See Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88–89 (2013). The NCUDTPA count here rests on unfair conduct as well as deception. ¶¶226, 229.[15]

The UTPA likewise requires reliance only where the plaintiff's theory of loss depends on the plaintiff's belief in a misrepresentation. *Bohr v. Tillamook Cnty. Creamery Assn.,* 373 Or. 343, 365-367 (2025); *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 127 (2015). Plaintiffs' theory of loss does not depend on any belief they formed about Nike's products. Plaintiffs paid a tariff-attributed

[15] Nike's argument that the Act requires a "substantial" in-state effect (MTD at 35 n.13) also fails: Plaintiff White is a North Carolina resident who alleges paying the inflated prices, ¶27. *See Wall v. Automoney, Inc.*, 877 S.E.2d 37, 49 (N.C. Ct. App. 2022) (nexus satisfied where North Carolina plaintiffs were injured in North Carolina).

increment that Nike has since recovered from the government and kept. That loss occurred whether or not a given Plaintiff noticed Nike's tariff statements.[16]

**6. Plaintiffs Have Adequately Pled Knowledge and Intent**

Nike's intent argument fails at the threshold. Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Nike's demand for specific facts showing that it intended to deceive asks for more than the Rules require. MTD at 34.

Nike also overstates what the statutes demand. The UTPA requires only a "willful" violation. A violation is willful when the defendant "knew or should have known that the conduct . . . was a violation." ORS 646.605(10). That is precisely the standard the complaint pleads. ¶106. The UTPCPL reaches deceptive conduct without proof of intent. *Gregg*, 245 A.3d at 649. The ICFA requires only that the defendant intended the plaintiff to rely on its conduct, not that it intended to deceive. *Siegel v. Levy Org. Dev. Co.*, 153 Ill. 2d 534, 542 (1992). Under the NJCFA, only omission-based claims require knowledge and intent; affirmative acts and unconscionable practices are actionable without them. *Cox*, 138 N.J. at 17–18.

The facts alleged readily support an inference of knowledge and intent. Nike knew the tariffs were under legal challenge when it imposed its price increases. ¶¶41, 106. It publicly tied those increases to the tariffs. ¶59. After the Supreme Court struck the tariffs down, Nike claimed refunds of the same tariffs and booked them as a "one-time benefit," while making no commitment to return any portion to the consumers who paid the increases. ¶¶11, 82–83. Nike responds that its

[16] Nike's own authority ties the reliance requirement to a half-truth theory. MTD at 33 n.12 (citing *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1146 (D. Or. 2020) (reliance required "[i]f a half-truth theory does indeed form the basis of Plaintiff's UTPA claim")).

transparency about these actions shows it intended no deception. MTD at 34. If anything, Nike's public decision to book the refunds as profit confirms that it intends to keep them.

#### 7. The LUTPA Class Bar Does Not Apply in Federal Court

Nike relies on *Landreneau v. Fleet Financial Group*, 197 F. Supp. 2d 551 (M.D. La. 2002). MTD at 36. *Landreneau* predates *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). *Shady Grove* held that Rule 23 governs whether a class action may be maintained in federal court, notwithstanding a state-law bar on class actions. 559 U.S. at 398–99, 405–10. The LUTPA provision on which Nike relies, La. Rev. Stat. § 51:1409(A), limits private actions to an individual capacity. Under *Shady Grove*, that limitation does not displace Rule 23 in this Court. *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335–36 (11th Cir. 2015) (holding that a class-action bar written into a state deceptive trade practices act does not apply in federal court). *Lisk* also rejected the argument that placing the bar inside the substantive statute changes the result, because that "affects the analysis not at all," *id.* at 1335–36, and the Fourth Circuit has since confirmed that a state statute limiting class actions yields to Rule 23 in federal court. *Grice v. Indep. Bank*, 147 F.4th 440, 446–48 (4th Cir. 2025).

### C. THE UNJUST ENRICHMENT CLAIM SURVIVES

#### 1. Nike Was Unjustly Enriched upon Receiving IEEPA Refunds

Oregon law governs these claims. A federal court applies the forum state's choice-of-law rules, and the party urging another state's law must show an actual, material conflict. *Great Am. All. Ins. Co. v. SIR Columbia Knoll Assocs. Ltd. P'ship*, 416 F. Supp. 3d 1098, 1102 (D. Or. 2019). Nike, an Oregon corporation whose tariff pricing policy and refund decisions emanate from Oregon (¶¶29, 60, 103), identifies no such conflict and analyzes the claim under Oregon law. MTD at 40. Under Oregon law, unjust enrichment develops "incremental[ly] . . . on a case-by-case basis, based on recognized grounds for imposing liability," and courts ask whether the facts fall within

an established legal category, drawing on "Oregon's own case law, . . . the Restatement (Third) of Restitution and Unjust Enrichment (2011) [and] appellate decisions from other states[.]" *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 127–28, 132–33 (2017); *LRY, LLC v. Lake Cty.*, 2018 WL 5300387, at *5 (D. Or. Oct. 25, 2018). All three sources support Plaintiffs' claim.

A recent decision from this District shows how that works. In *Gessele v. Jack in the Box, Inc.*, 427 F. Supp. 3d 1276 (D. Or. 2019), *rev'd in part and remanded on other grounds*, 174 F.4th 1108 (9th Cir. 2026),[17] the defendant required employees to buy shoes, deducted the cost from their paychecks, and then kept for itself a $2 rebate from the shoe company on each pair sold. Because Oregon courts had not addressed the retention of a rebate, the court looked to Restatement § 48: "If a third person makes a payment to the defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment." *Id.* at 1336. Comment e, the court explained, describes "[o]ne salient group" of such cases, those in which "the defendant has been compensated or reimbursed by a third party for costs or expenditures incurred by the claimant," and the claim is "particularly secure when the basis of the claim is the payment of money, thereby removing any question about valuation." *Id.* The court concluded that § 48 and comment e supplied the established legal category *Larisa's* requires, and it denied the defendant summary judgment on the claim. *Id.* at 1336–37.

Similar to the employees in *Gessele*, Plaintiffs here furnished value in the form of paying for IEEPA tariffs and, similar to the employer in *Gessele*, Nike was reimbursed from a third party

[17] The *Gessele* plaintiffs also asserted a statutory claim for unlawful wage deductions. A jury later returned a verdict for plaintiffs on both unjust enrichment and money had and received (Dkt. 381), and the court entered judgment (Dkt. 449). The unjust enrichment claim was not appealed and thus not reversed.

(the United States Government) for those same IEEPA tariffs. Plaintiffs have the better equitable claim to the amounts Nike recovered because they and the putative class already paid Nike those tariff costs. Established Oregon law reaches the same conclusion: "Oregon courts have 'long held' the right to a refund of overpayment is implied by law." *Gessele*, 427 F.Supp.3d at 1337 (citing *Digimarc Corp. v. Verance Corp.*, 2011 WL 7077315, at *11 (D. Or. Sept. 19, 2011); *Fred S. James & Co. v. E.G. Doll & Co.*, 104 Or. App. 508, 512, 802 P.2d 86 (1990)).

Retaining a benefit from a third party that in equity belongs to another is a well-recognized principle under unjust enrichment. *See Motameni v. Adams*, 2022 WL 3682940, at *10 (D. Or. Aug. 25, 2022) ("the plaintiff in an unjust enrichment claim can confer a benefit on the defendant through the actions of a third party. The defendant only needs to have received a benefit that rightfully belongs to the plaintiff."); *CLF 007 v. CooperSurgical, Inc.*, 2025 WL 975175, at *7 (D. Or. Mar. 31, 2025) (same). In short, Plaintiffs are entitled to restitution of the tariff amounts they paid because they bore those costs in the first instance.[18]

Other states' appellate courts agree. In *Town of New Hartford v. Connecticut Resources Recovery Auth'y*, 291 Conn. 433, 970 A.2d 592 (2009), a waste authority recouped losses from an illegal loan through increased "tip fees" charged to the plaintiff towns under contract,[19] then recovered a "sizeable portion of that loss" through litigation without refunding the towns. *Id.* at 442–43, 970 A.2d at 604–05. Relying on Restatement § 48, the court held that the towns "had an

---

[18] Nike's reliance on *Allstream Business US, LLC v. Carrier Network Solutions, LLC*, 2021 WL 3488086, at *6 (D. Or. Aug. 9, 2021) (MTD at 40), is misplaced. *Allstream* was a default judgment, and the plaintiff's theory there fit none of the "established legal categories of unjust enrichment." Here, Restatement § 48 supplies the category.

[19] The court found that the express contract between the parties did not bar the claim for unjust enrichment because there was "no provision of those contracts [that] addresses what should occur when the defendant recovers a settlement reimbursing losses previously borne by the plaintiffs through higher tip fees." *New Hartford*, 291 Conn. at 454, 970 A.2d at 611.

equitable interest in the settlement funds" and that "the defendant was unjustly enriched at the plaintiffs' expense." *Id.* at 470, 478, 970 A.2d at 619, 624.

Courts have rendered similar rulings in the context of refunded taxes, and Nike's composite-price defense fails for the reasons set out in Section B.2.c. *See Cohon v. Oscar L. Paris Co.*, 17 Ill. App. 2d 21, 27 (Ill. App. Ct. 1st Dist. 1958) ("[W]hen the money was returned to defendant it was money which did not belong to the defendant, but in equity and good conscience belonged to the customers who had paid it."); *Harrison Sheet Steel Co. v. Lyons*, 15 Ill. 2d 532, 535–37 (1959) (customer billed a separately stated tax entitled to restitution of that amount once retailer obtained refund). Those cases involved separately stated taxes, but the test is whether customers were paying over a known cost, not how it appeared on the invoice. *See* Section B.2.c.

**2. Nike's Attempts to Dismiss the Unjust Enrichment Claim Fail**

**a. No Express Contract Addresses Tariff Refunds**

Nike argues the sale of retail items creates a contract which precludes any unjust enrichment claim, but to the extent any contract exists[20], Nike confuses the issues. Plaintiffs' unjust enrichment claim does not take issue with the transaction itself but instead whether Nike is permitted to retain IEEPA tariff refunds after the transaction occurred. At any rate, Nike fails to identify any contractual term that addresses how the parties will treat subsequently obtained tariff

[20] Nike's conditional argument—that if Plaintiffs purchased their items directly from Nike, then Nike's Terms of Sale creates a contract (MTD at 38) illustrates why this issue is not ripe for adjudication, because it cannot be resolved on the face of the pleadings. Nor are the Terms of Sale properly before the Court: Nike seeks judicial notice only of their "existence," ECF No. 43 at 4–5, which cannot establish that any Plaintiff agreed to them. Plaintiffs oppose judicial notice of Exhibits 4 and 5. *See Khoja*, 899 F.3d at 999–1000, 1002–03. The Terms are also an agreement with "NIKE Retail Services, Inc.," not Defendant Nike, Inc., Gordon Decl. Ex. 4 at 1; *id.* Ex. 5 at 2, and on pricing they say only that "[p]rices may change from time to time," *id.* Ex. 4 at 5; *id.* Ex. 5 at 7. Nothing about tariff refunds.

refunds, and this failure is fatal to Nike's argument. Oregon law holds that "[t]here 'cannot be a valid legally enforceable contract and an implied contract *covering the same [subject matter]*.'" *Arnett v. Bank of America, N.A.*, 874 F.Supp.2d 1021, 1035 (D. Or. 2012) (quotation omitted) (emphasis added); *see also NextWave Marine Sys., Inc. v. M/V Nelida*, 500 F. Supp. 3d 1162, 1170 (D. Or. 2020) (Immergut, J.) (awarding equitable relief when express contract did not cover work performed).[21]

Nike relies on *Hennessey v. Gap, Inc.*, 86 F.4th 823 (8th Cir. 2023), but that plaintiff challenged Gap's pricing scheme, and the court dismissed the unjust enrichment claim because the parties' agreement as to pricing was contained in the payment receipt. *Id.* at 831. Here, Plaintiffs' unjust enrichment claims pertain to events that occurred post-sale: Nike's retention of tariff refunds that they were already provided by Plaintiffs. *See Klein v. Arkoma Prod. Co.*, 73 F.3d 779 (8th Cir. 1996) (finding the existence of an express contract does not preclude plaintiff's unjust enrichment claim over an issue not addressed in the parties' contract).

**b. Nike's Benefit-of-the-Bargain Argument Is a Straw Man**

Nike tries to recast Plaintiffs' claim as buyer's remorse, MTD at 38–41, but Plaintiffs' claim is not about the bargain. The unjust enrichment arises from Nike's retention of the IEEPA refunds, not from the sale. The employees in *Gessele* received their shoes, and the plaintiffs in

[21] The subject matter requirement is common across states that recognize unjust enrichment claims. *Gerlinger v. Amazon.com, Inc.*, 311 F.Supp.2d 838, 856 (N.D.Cal.2004); *DOD Technologies v. Mesirow Ins. Services, Inc.*, 887 N.E.2d 1, 9 (Ill. Ct. App. 2008); *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo.App. W.D. 2010) (same); *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich.App. 463 (Mich. Ct. App. 2003) (same); *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 140–41 (D.N.J. 2020) (same); *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713 (1962) (same); *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 669 (Pa. Super. 2007) (same); *Peterson v. Kitsap Community Federal Credit Union*, 171 Wash.App. 404, ¶¶53–58 (Wash. Ct. App. 2012) (same).

*New Hartford* received waste disposal services, yet both courts allowed unjust enrichment claims because the defendants were later reimbursed by a third party for costs the plaintiffs had borne. The same is true here. Whether Plaintiffs got fair value for their Nike products is beside the point; they are entitled to restitution of the tariff amounts they paid, which Nike has now recovered a second time from the government.

Nike's cases on this point are inapposite. *Trotta v. Am. Airlines, Inc.*, 2025 WL 1144779, at *1–3 (6th Cir. Apr. 18, 2025), rejected a claim for a concealed travel-insurance fee, because the disclosure was not misleading and the transaction was an ordinary sale. *Wilson Area Sch. Dist. v. Skepton*, 860 A.2d 625, 629–30 (Pa. Commw. Ct. 2004), turned on a lump-sum construction contract that waived claims on final payment. Neither involved a seller that collected a specific cost from customers and was then reimbursed for that same cost by a third party.

#### c. Plaintiffs' Consumer Protection Claims Survive Alongside Unjust Enrichment Claims

Finally, Nike asserts that the unjust enrichment claim brought by Plaintiffs fails simply because it claims that the consumer protection claims fail. MTD at 41. They do not, and the argument fails regardless. *First*, Nike misstates the holding in *Easterbrook*, which merely states that a duplicative unjust enrichment claim "may face challenges." *Easterbrook v. LinkedIn Corporation*, 2023 WL 3022497 at *4 (D. Or. April 20, 2023). Oregon courts allow unjust enrichment to be pled in the alternative where no adequate remedy at law exists. *Martell*, 492 F. Supp. 3d at 1146; *see also Scherer v. Tapestry, Inc.*, 2026 WL 2575509, at *2–3 (D. Or. Aug. 31, 2026). Plaintiffs are seeking the equitable remedy of restitution in the alternative.

### D. PLAINTIFFS HAVE A VALID MONEY HAD AND RECEIVED CLAIM

Nike repeats its unjust enrichment arguments in addressing Plaintiffs' money had and received claims, but those arguments fail for the reasons above. Money had and received is a claim

that is "liberal in form and greatly favored by the courts." *Rosenblum v. First State Bank of Elgin*, 283 Or. 123, 127, 581 P.2d 515, 517 (1978) (citation omitted). "The generally accepted test which determines whether a recovery [for money had and received may be obtained] ... is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts [a] claim." *Belmont Int'l v. Am. Int'l*, 313 Or. 112, 124 (1992).

Nike disputes whether Plaintiffs are owed the IEEPA refund money "as a matter of right," MTD at 43, but the answer to this question rests on whether Nike "in equity and good conscience, is entitled to retain the money to which [Plaintiffs] assert a claim." *Belmont Int'l*, 313 Or. at 124. Nike's only defense of its entitlement is the composite-price doctrine, which cannot be resolved against Plaintiffs on the pleadings for the reasons in Section B.2.c. The reason Nike is in possession of the IEEPA refunds is that CBP created a refund structure that runs to importers like Nike and gives consumers no way to collect them. ¶78. Courts have sustained a money had and received theory on this kind of showing. *Am. Packing*, 122 F.2d at 449 ("sufficient to sustain a cause for money had and received . . . to show that the vendor obtained money from the Government under such circumstances that in equity and good conscience it should be returned"); *see also Anniston*, 301 U.S. at 350 (action for money had and received "aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which ex aequo et bono belongs to the plaintiff" (citation omitted)). Nike cannot claim in equity and good conscience that it is entitled to retain the IEEPA refunds or that it has a superior claim to the money than Plaintiffs.[22]

Nike's express-contract argument fails for the reasons stated in Section C.2.a.

---

[22] Nike's suggestion that Louisiana does not recognize money had and received claims (MTD at 42) misreads Louisiana law, which states: "A person who has received a payment or a thing not owed to him is bound to restore it." La. Civ. Code art. 2299.

**E. PLAINTIFFS STATE A CLAIM UNDER THE DECLARATORY JUDGMENT ACT**

Nike argues that Plaintiffs' Declaratory Judgment Act ("DJA") claim fails because Plaintiffs allege no injury in fact and because the claim depends on their other claims succeeding. MTD at 43–44. Neither point has merit. *First*, Plaintiffs have alleged injury in fact for the reasons in Section A. *Second*, Plaintiffs do not contend that the DJA supplies an independent cause of action. *See City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022). The declaratory claim is a form of relief that rests on the claims that survive under Sections B through D, and it presents an actual controversy over who owns the refunds. ¶¶235–37.

**F. ANY DEFICIENCY IS CURABLE, AND LEAVE TO AMEND SHOULD BE GRANTED**

If the Court finds any claim insufficiently pled, Plaintiffs request leave to amend. Leave should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), a policy "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Leave should be granted "unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citation omitted); *see also Maya*, 658 F.3d at 1072 (standing allegations may be supplemented by amendment). *See also Laschober*, 2023 WL 4373652, at *6 (dismissing for lack of standing with leave to amend).

Each deficiency Nike identifies is curable. If necessary, Plaintiffs can plead (1) the products each Plaintiff purchased, when, through which channel, and at what price, *see* MTD at 4–5, 15–16, 18–19; (2) in each statutory count, the omission that Nike intended to seek and keep tariff refunds, which the Complaint already pleads in the WCPA count (¶214); (3) compliance with the CLRA's notice requirement, Cal. Civ. Code § 1782(a); (4) Plaintiff Dunn's exposure to and reliance on Nike's tariff-related pricing statements; and (5) further detail about Nike's tariff-related

price announcements in June and October 2025, drawn from sources the Complaint already cites. ¶53 nn.20–22. Plaintiff Dunn's original complaint pleaded specific prices (MTD at 8) which confirms that these facts exist and can be pleaded. For example, Dunn alleged that he bought Vomero Plus by You shoes on or about January 16, 2026, and Vomero 18 shoes on or about January 25, 2026, from Nike at full price, after Nike raised prices on footwear above $150 by $10. *Dunn v. Nike, Inc.*, No. 3:26-cv-00954-IM, ECF No. 1 ¶¶ 32, 39–41 (D. Or.).

Nike's request for dismissal with prejudice, MTD at 44, rests on two points, and neither shows futility. First, the Consolidated Complaint was not filed in response to any ruling identifying deficiencies, so Plaintiffs have not had the benefit of the Court's views. Second, Plaintiffs' decision not to provide Nike with their personal email addresses before discovery, MTD at 5 n.1, has no bearing on whether any pleading deficiency can be cured. Any dismissal should be without prejudice and with leave to amend.

## CONCLUSION

If the tariff was reason enough to raise the price, its refund is reason enough to return the money. For these reasons, the Court should deny Nike's Motion to Dismiss in its entirety.[23] In the alternative, the Court should grant Plaintiffs leave to amend any claim it finds insufficiently pled.

/ / /

/ / /

/ / /

[23] Nike's footnote 15 (MTD at 44–45 n.15) raises no ground for dismissal. It previews class-certification arguments. Those arguments are premature and are properly addressed, if at all, under Rule 23.

DATED this 30th day of October, 2026

| | |
|---|---|
| Jason T. Dennett, *pro hac vice*<br>**MILBERG, PLLC**<br>1700 7th Ave, Suite 2100<br>Seattle, WA 98101<br>Telephone: (516) 515-9124<br>jdennett@milberg.com<br><br>Gary M. Klinger*<br>**MILBERG, PLLC**<br>227 W. Monroe Street, Suite 2100<br>Chicago, IL 60606<br>Telephone: 866.252.0878<br>gklinger@milberg.com | By: */s/ Patrick M. Wallace*<br>Patrick M. Wallace, *pro hac vice*<br>Jeremy R. Williams, *pro hac vice*<br>Matthew E. Lee*<br>**LEE SEGUI PLLC**<br>421 N. Harrington Street, Suite 460<br>Raleigh, NC 27603<br>Telephone: (855) 496-7500<br>pwallace@leesegui.com<br>jwilliams@leesegui.com<br>mlee@leesegui.com |
| M. Anderson Berry, *pro hac vice*<br>Timothy Emery*<br>Brook Garberding*<br>Gregory Haroutunian, *pro hac vice*<br>Brandon P. Jack*<br>**EMERY REDDY, PC**<br>600 Stewart Street, Suite 1100<br>Seattle, WA 98101<br>Phone: 916.823.6955<br>anderson@emeryreddy.com<br>emeryt@emeryreddy.com<br>brook@emeryreddy.com<br>gregory@emeryreddy.com<br>brandon@emeryreddy.com | |
| ***Interim Co-Lead Counsel*** | |
| By: */s/ Kaleigh N. Boyd*<br>Kaleigh N. Boyd, OSB #253094<br>**MCNAUL EBEL PLLC**<br>600 University Street, Suite 2700<br>Seattle, WA 98101<br>Tel: (206) 467-1816<br>kboyd@mcnaul.com | Jennifer Rust Murray, OSB #100389<br>Toby J. Marshall, *pro hac vice*<br>**TERRELL MARSHALL LAW GROUP PLLC**<br>1700 Westlake Avenue North, Suite 300<br>Seattle, Washington 98109<br>Telephone: (206) 816-6603<br>jmurray@terrellmarshall.com<br>tmarshall@terrellmarshall.com |
| ***Rule 83-3(a)(1) Local Counsel*** | |

| | |
|---|---|
| Terence R. Coates, *pro hac vice*<br>Dylan J. Gould, *pro hac vice*<br>Jonathan T. Deters, *pro hac vice*<br>**MARKOVITS, STOCK & DEMARCO, LLC**<br>119 E. Court Street, Suite 530<br>Cincinnati, OH 45202<br>Telephone: (513) 651-3700<br>tcoates@msdlegal.com<br>dgould@msdlegal.com<br>jdeters@msdlegal.com | Zachary Arbitman, *pro hac vice*<br>Nicole A. Maruzzi, *pro hac vice*<br>**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP**<br>1845 Walnut Street, 21st Floor<br>Philadelphia, PA 19103<br>Telephone: (215) 567-8300<br>zarbitman@feldmanshepherd.com<br>nmaruzzi@feldmanshepherd.com |
| ***Counsel for Plaintiffs*** | |


**Pro Hac Vice* applications forthcoming